

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 2-0 2014

_____ for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Mac. 20, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 87518-9 |
| | ) | |
| ROBERT LEE YATES, JR., | ) | |
| | ) | En Banc |
| Petitioner. | ) | |
| | ) Filed | MAR 2 0 2014 |

OWENS, J. -- Thirteen years ago, Robert Lee Yates Jr. agreed to plead guilty to 13 counts of aggravated first degree murder and 1 count of attempted first degree murder in exchange for a 408-year prison sentence. Yates now seeks to withdraw those guilty pleas, claiming that he should technically have been sentenced to 408 years with a possible extension to life in prison rather than a determinate 408-year sentence. Because he has not shown that he was prejudiced by this difference, we dismiss this personal restraint petition.

## FACTS

Yates has been convicted by two courts for a series of murders across Washington State. In 2000, Yates pleaded guilty in Spokane County Superior Court to 13 counts of aggravated first degree murder and 1 count of attempted first degree

murder. Yates agreed to a 408-year sentence for these crimes. Then, in 2002, he was convicted of two counts of aggravated first degree murder in Pierce County Superior Court and was sentenced to death. This court affirmed Yates's Pierce County convictions and death sentence in 2007. *State v. Yates*, 161 Wn.2d 714, 794, 168 P.3d 359 (2007). Yates filed a personal restraint petition in 2008 challenging the Pierce County death sentence and this court recently dismissed that petition. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 66, 296 P.3d 872 (2013).

Now Yates challenges his 2000 Spokane County judgment and sentence. That judgment and sentence resulted from a plea deal negotiated with prosecutors. Yates agreed to plead guilty to 13 counts of aggravated first degree murder and 1 count of attempted first degree murder. In return, prosecutors in Spokane County agreed to forgo the death penalty. As part of the deal, prosecutors agreed to dismiss one count of first degree murder for the death of Shawn McClenahan in exchange for Yates agreeing not to attempt to withdraw his guilty pleas or to collaterally attack the sentence. Prosecutors reserved the right to refile the McClenahan murder charge—and to seek the death penalty for that charge—if Yates violated that part of the agreement.

In Yates's Spokane County judgment and sentence, the total sentence for the 14 counts was 4,900 months (just over 408 years). At issue in this case are the sentences for counts one and two. Those crimes occurred in 1975, prior to the Sentencing

Reform Act of 1981, chapter 9.94A RCW. The judge listed the sentences for counts one and two each as 20 years. The sentences for all of the counts were to be served consecutively.

Yates argues that his judgment and sentence is invalid because the 20-year sentences for counts one and two exceeded the judge's legal authority under the law, which required indeterminate life sentences (with a minimum of 20 years) for those counts. In his petition, Yates did not address the issue of prejudice or attempt to make any showing thereof. The State contends that (1) Yates cannot file this personal restraint petition because he agreed not to collaterally attack his plea, (2) the personal restraint petition is time barred under RCW 10.73.090 because the judgment and sentence was facially valid and the personal restraint petition was not filed within one year of the judgment becoming final, and (3) Yates cannot withdraw his plea because he failed to show any prejudice resulting from any error.

## ISSUES PRESENTED

1. Is Yates precluded from filing this personal restraint petition because he agreed not to collaterally attack his guilty plea in exchange for the State dismissing one murder count against him?

2. Is Yates's judgment and sentence facially invalid, thus allowing his personal restraint petition to avoid the one-year time bar?

3. Can Yates withdraw his guilty plea based on the misinformation in his judgment and sentence despite his failure to make any showing of prejudice?

ANALYSIS

*1.    Yates's Plea Agreement Does Not Bar Collateral Attacks*

As part of Yates's plea agreement, the prosecutors agreed to dismiss without prejudice one count of aggravated first degree murder for the death of McClenahan. In exchange, Yates agreed

> that (a) any attempt to withdraw his guilty pleas; or (b) any attempt to collaterally attack any conviction entered under this cause, through personal restraint petition, habeas corpus action, or any other method, will authorize the State to re-file one count of aggravated first degree murder regarding the death of Shawn McClenahan and to seek any lawful sentence, including death.

Pers. Restraint Pet., App. D at 3-4 (Plea Agreement). The parties further agreed that a breach of this provision by Yates would not be a ground for vacating any conviction or guilty plea he entered under the agreement, even if the State had cause to refile the murder charge for the death of McClenahan.

The State argues that the plea agreement constitutes a waiver of Yates's right to collaterally attack his guilty plea and that his personal restraint petition is thus void ab initio. The State is incorrect. Nothing in the plea agreement prohibits Yates from filing a collateral attack on his plea. The agreement simply provides that if Yates collaterally attacks his guilty plea, the State may refile charges based on the death of McClenahan. This personal restraint petition is a collateral attack on Yates's guilty

plea. Therefore, the State may consider this personal restraint petition a breach of the plea agreement and attempt to refile the McClenahan charge. However, Yates never waived his right to collaterally attack his plea and thus he may proceed with this petition.[1]

2.    *Yates Is Not Subject to the One-Year Time Bar Because His Judgment and Sentence Is Facially Invalid*

Generally, personal restraint petitions must be filed within one year of a judgment becoming final. RCW 10.73.090(1). There are a number of exceptions to this one-year requirement, including a judgment and sentence that is facially invalid. RCW 10.73.090(1), .100. Yates argues that his judgment and sentence is facially invalid and thus not subject to the one-year limit.

Specifically, Yates faults the trial court for imposing 20-year determinate sentences for counts one and two. Those murders were committed on July 13, 1975—prior to the Sentencing Reform Act of 1981. By law, when a court sentences an individual for a crime that occurred before July 1, 1984, it must set a minimum term. RCW 9.95.011(1). After the individual serves the minimum term, the Indeterminate Sentence Review Board may consider him or her for parole, but may not reduce or increase the minimum term set by the court. *Id.*

---

[1]Because Yates did not waive his right to collateral attack, we do not address whether a complete waiver of collateral attack rights would be enforceable.

Generally, a judgment is facially invalid when "a court has in fact exceeded its statutory authority in entering the judgment or sentence." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 135, 267 P.3d 324 (2011). For example, when a defendant pleaded guilty to a lesser charge in exchange for a prohibition on his ability to earn early release time, we held that the judgment and sentence was facially invalid because the judge lacked the statutory authority to restrict the defendant's ability to earn early release time. *In re Pers. Restraint of West*, 154 Wn.2d 204, 215-16, 110 P.3d 1122 (2005).

In this case, the judge exceeded his statutory authority in entering the judgment and sentence. He only had authority to impose a 20-year minimum sentence for counts one and two, but instead he imposed a 20-year determinate, or maximum, sentence. The authority for determining the maximum sentence rests with the Indeterminate Sentencing Review Board. RCW 9.95.011(1). This case differs from *Coats*, where the court found that a judgment and sentence was valid on its face when the error related only to the sentencing range. 173 Wn.2d at 143. Here, the error relates to the actual sentence imposed. The law does not allow the judge to set a maximum or determinate sentence as the judge did on counts one and two. Thus, the sentence was outside of the judge's statutory authority. Yates is correct that his judgment and sentence is facially invalid and, as a result, his petition is not time barred.

3. *Yates Does Not Show That the Judge's Sentence for Counts One and Two Resulted in Any Prejudice*

Yates seeks to withdraw his plea, contending that it was not knowing, voluntary, and intelligent because he was not informed that the proper sentence for counts one and two was an indeterminate sentence of 20 years to life rather than a determinate sentence of 20 years. Generally, a personal restraint petitioner alleging constitutional error must show actual and substantial prejudice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). But Yates does not address the issue of prejudice in his petition or reply—even though one of the State's primary arguments in its response is that his petition fails because it does not show actual and substantial prejudice. For support, Yates cites two cases that do not seem to require prejudice under somewhat similar facts: *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299-300, 88 P.2d 390 (2004), and *In re Pers. Restraint of Bradley*, 165 Wn.2d 934, 939-41, 205 P.3d 123 (2009).

We recently analyzed both *Isadore* and *Bradley* in *In re Personal Restraint of Stockwell*, ___ Wn.2d ___, 316 P.3d 1007 (2014), where we directly addressed the issue of whether a personal restraint petitioner alleging that misinformation rendered his plea involuntary must show actual and substantial prejudice. *Id.* at 1015. In *Stockwell*, we clarified that a personal restraint petitioner attempting to withdraw his plea because of misinformation must show actual and substantial prejudice. *Id.* We explained that *Isadore* did not require the petitioner to show actual and substantial

7

prejudice because the unique circumstances of the case compelled the court to apply the direct appeal standard rather than the personal restraint petition standard. *Id.* at 1013. We also explained that *Bradley* cited *Isadore*, thus applying that same standard. *Id.* at 1013-14, 1015. We ultimately issued a clear holding: "a [personal restraint] petitioner seeking to withdraw a plea based on a misstatement of the statutory maximum is required to satisfy the actual and substantial prejudice standard on collateral attack." *Id.* at 1015. That holding is on point in this case.

Applying our holding in *Stockwell*, Yates must show actual and substantial prejudice in order to obtain relief through this personal restraint petition. As noted above, Yates did not address prejudice in his petition or in his reply. His only attempt to show that he was prejudiced by the error in his sentence was in a later supplemental declaration where he indicated that he would not have taken the plea deal if he had known that the sentences for two of his murder charges were 20 years rather than what the law required: an indeterminate life sentence with a minimum of 20 years. However, we do not attempt to look into the mind and motivations of the defendant when determining whether an error resulted in prejudice. *Id.* Instead, we evaluate the practical effects that result from the error. *Id.*

In this case, there was no practical effect resulting from the error. Yates agreed to a sentence of 408 years in prison and he should have been sentenced to a minimum

8

of 408 years with a potential extension to a life sentence.[2] Given the reality of the human life-span, there is no difference between those two sentences. There is simply no way to find prejudice in this context. Without a showing of prejudice, the petition must be dismissed.

## CONCLUSION

To avoid the death penalty for 13 murders, Yates agreed to plead guilty and spend the rest of his life in prison by way of a 408-year sentence. He was fully informed of the consequence of that plea: there was no possibility that he would ever be released from prison, regardless of how long he lived. We see no reason to invalidate his plea. His petition is dismissed.

---

[2] The dissent contends that there are two practical differences between the 408-year sentence Yates received and the sentence he should have received. First, the two 20-year sentences for counts one and two could have run concurrently rather than consecutively. Second, Yates may have been eligible for parole on counts one and two. But, of course, neither of those differences would have had any effect until after Yates had served his 368-year sentence on the rest of the counts. We stand by our conclusion that humans do not live long enough for these differences to have any practical effect.

_Owens, J._

WE CONCUR:

_Madsen, C.J._

_C. Johnson, J._

_Fairhurst, J._

_J.M. Johnson, J._

_Wiggins, J._

_González, J._

10

No. 87518-9

STEPHENS, J. (concurring)—I agree with much of the analysis in Justice Gordon McCloud's dissent. In particular, the relevant question in deciding whether Yates may withdraw his guilty plea should be whether the (acknowledged) misadvisement about the sentence he faced rendered his plea involuntary. This was the inquiry in our key decisions on this topic. *In re Pers. Restraint of Hews,* 108 Wn.2d 579, 594, 597, 741 P.2d 983 (1987) (*Hews* II) (court must examine "'totality of circumstances'" to determine whether petitioner understood the nature of the charge, the elements, and whether Hews "had discussed with his attorney alternative courses of action"); *In re Pers. Restraint of Mendoza Montoya,* 109 Wn.2d 270, 277, 744 P.2d 340 (1987). It was also the focus of the United States Supreme Court's principal decision on this topic. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). This measure of prejudice is similarly reflected in landmark decisions on the related topic of what constitutes ineffective assistance of counsel in the plea-advice context. *Lafler v. Cooper,* ___ U.S. ___, 132 S. Ct. 1376, 1390-91, 182 L. Ed. 2d 398 (2012) (distinguishing inquiry applicable to ineffective

assistance claim arising in the plea context from requirement that the plea itself be "knowing and voluntary"; treating prejudice in the former context as having adverse effect on cost-benefit analysis involved in deciding whether to plead guilty); *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (defense counsel must advise defendant pleading guilty of the consequence of deportation to provide effective assistance).

Nonetheless, I find it difficult to distinguish this case from the court's recent decision in *In re Personal Restraint of Stockwell*, ___ Wn.2d ___, 316 P.3d 1007 (2014). There, this court found no prejudice because:

> the sentence [Stockwell] received was statutorily authorized. Although the judgment and sentence misstated the maximum, he received an exceptional downward sentence, below both the stated maximum and the actual maximum. Moreover, his sentence was completed over two decades ago. *See State v. Hardesty*, 129 Wash.2d 303, 313-14, 915 P.2d 1080 (1996) (discussing double jeopardy as applied to sentencing and acknowledging that an erroneous sentence that has been fully served precludes imposition of a heightened sentence where the defendant acquires a legitimate expectation of finality). Under the facts here, Stockwell has failed to meet his burden to show that the error complained of resulted in actual and substantial prejudice.

*Id.* at 1015. Applying that reasoning here, Yates cannot demonstrate prejudice. As the majority notes, even though his sentence was unauthorized, there is no practical difference in a human life span between the sentence imposed and the one Yates should have received. *See* majority at 9 & n.2.

While I joined the dissent in *Stockwell*, it did not carry the day. At the same time, the court in *Stockwell* did not purport to overrule any cases. Thus, being true to all the relevant precedent—not just *Stockwell*, but also *Hews* II, *Mendoza*

*Montoya,* and the federal cases cited above—we should not so easily dismiss Yates's personal restraint petition. We should instead consider whether he has overcome the strong presumption that his guilty plea was validly entered.

In so doing, we need not accept at face value Yates's self-serving statement, made years after the fact, that he would not have pleaded guilty in an effort to avoid a death sentence had he known that he faced less than 408 years in prison but would still be in prison for the rest of his life. *Cf. State v. Osborne,* 102 Wn.2d 87, 97, 684 P.2d 683 (1984) (defendant seeking to withdraw plea must present some evidence of involuntariness beyond his self-serving allegations). Because I agree with the majority that "there was no possibility that he would ever be released from prison," majority at 9, Yates has not demonstrated that the misadvisement he received about the particular sentence he faced invalidated his decision to plead guilty. For this reason, I concur in the majority's conclusion that he has not demonstrated prejudice entitling him to relief in this personal restraint petition.

Stephens, J.

No. 87518-9

GORDON McCLOUD, J. (dissenting)—This personal restraint petition (PRP) was filed by a man, Robert Lee Yates Jr., who received an illegal sentence. The majority acknowledges this. Majority at 6. This PRP is timely, given that the illegality of the sentence is clear from the face of the judgment. The majority acknowledges this, too. Majority at 6-7. This PRP is based on proof that Yates was given misinformation about the sentence he would receive for two of his murder convictions if he pleaded guilty, along with proof (in the form of the judgment & sentence) that the trial judge in fact imposed illegal sentences on those two convictions. The majority acknowledges this as well. Majority at 6. In fact, the sentence was not just "illegal" in a technical sense but, under the controlling legislation, the sentence fell outside the authority of the judge to impose. The majority acknowledges this final point, too. *Id.*

The majority, however, asserts that the PRP raises a single claim of invalidity of the plea due to misinformation about its consequences; that

Yates must prove prejudice to prevail on this claim; and that Yates failed to prove prejudice because both the legal and illegal sentences, and both the misinformation and true information about sentencing consequences, were so similar.

I respectfully disagree. As I read the PRP, Yates has raised not one but three claims based on this set of facts: (1) that the plea is invalid because it was not knowing, intelligent, and voluntary, PRP at 3-4, 9-10 (citing, among other things, the misinformation about consequences provided to Yates by both the trial court at sentencing and the "Statement of Defendant on Plea of Guilty"); (2) that the sentence actually imposed is illegal because it exceeds the authority of the court, PRP at 4-7; and (3) that the sentence actually imposed is illegal because it violates due process clause protections against retrospective application of new criminal punishments, PRP at 9. Only Yates's first claim potentially entitles him to the relief he seeks—withdrawal of his plea—but each claim merits examination.

> A. *A Petitioner Claiming a Plea Was Involuntary Must Show Prejudice, and Yates Has Done So Here*

Yates's first claim is that his guilty plea was not knowing, intelligent, and voluntary, and that he suffered prejudice because material misinformation affected his decision about whether to plead guilty. The

- 2 -

majority, however, characterizes the prejudice question as whether the illegal 408-year determinate sentence imposed is really worse, as a practical matter, than a legal sentence of "408 years with a possible extension to life in prison" would have been. Majority at 1. The majority then answers the question no—it rules that sentences of 408 years, or 408 years give or take a few, are not meaningfully different.

I disagree with the majority's analysis of prejudice for two reasons. First, the determinate SRA[1] sentence that was illegally imposed—a total of 40 years—is actually *more* harsh, not less harsh, than the legal, indeterminate, sentence (which could have been reviewed for parolability in 13 years and 4 months) would have been. Second, comparing the length of the sentence that should have been imposed with the length of the sentence that was actually imposed is the wrong way to decide if misinformation caused prejudice. Instead, this court should ask whether the misinformation affected the decision to plead guilty.

      i.     Yates's Sentence Is More Harsh, Not More Lenient, Than a Lawful Sentence Would Have Been

Under the sentencing law applicable to Yates's two 1975 crimes, Yates's sentence for each of those pre-SRA crimes should have been 20

---

[1] Sentencing Reform Act of 1981, chapter 9.94A RCW.

years to life. But those 20-year pre-SRA sentences were not as harsh as the 20-year SRA sentences that Yates actually received, for several reasons.

First, the illegal determinate SRA sentences actually imposed had to run consecutively. RCW 9.94A.589(1)(b). The pre-SRA sentences for the 1975 crimes could have been run concurrently—a point that the PRP makes. PRP at 13.

Next, the illegal determinate SRA sentences actually imposed did not allow accrual of good time. They required service of a full 20 years, plus another full 20 years, without "any . . . form of early release." RCW 9.94A.540(1)(a), (2).[2] In contrast, defendants sentenced for murder under the pre-SRA law (which should have applied to Yates's two 1975 convictions) were entitled to up to one-third of their sentences off for good time—meaning that a defendant sentenced to 20 years could have a first parolability hearing at 13 years, 4 months. *See* RCW 9.95.110(1) (establishing up to one-third off sentence for good time for "an offender

---

[2] Note that this statute was recodified from former RCW 9.94A.590 (2000), which went into effect in 2001, the year after Yates entered his guilty pleas. LAWS OF 2000, ch. 28, §§ 7, 46. However, the legislature made clear that the 2001 amendments to the SRA were for clarifying purposes only and not to be construed as making "a substantive change in the sentencing reform act." *Id.* § 1. The determinate sentencing statute in effect at the time of Yates's guilty pleas also required a 20-year minimum sentence without any form of early release. Former RCW 9.94A.120(4) (1998).

convicted of a crime committed before July 1, 1984"); RCW 9.95.115 (establishing availability of parole after "twenty consecutive years less earned good time").

So the pre-SRA sentence that should have been imposed was really more lenient, not less lenient, than the SRA sentence that was actually imposed.[3] The majority therefore errs in concluding that the pre-SRA

---

[3] To be sure, this conclusion is based on some guesswork about which version of the illegal SRA sentence was really imposed, and what the consequence of a pre-SRA indeterminate sentence would have been. The rules applicable to pre-SRA prisoners have changed over time. In 1991, after the two murders at issue but before Yates's 2000 pleas, pre-SRA prisoners argued that because former RCW 9.95.115 (1989) allowed parole consideration as early as 20 years less good time from the date upon which they began serving their sentences, while a new law, enacted as Substitute H.B. 1457, 51st Leg., Reg. Sess. (Wash. 1989) (SHB 1457), required the Indeterminate Sentence Review Board to set minimum terms for those with life sentences "'reasonably consistent'" with SRA guidelines, that new law retrospectively increased their punishment. *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 187, 814 P.2d 635 (1991) (quoting RCW 9.95.009(2)). These inmates explained that SRA guidelines provide sentences that are, on the whole, much higher than the 20 years less good time that former RCW 9.95.115 required prior to parole consideration, and this court agreed. We stated, "It is therefore unlikely that a 20-year minimum term will be given under the SRA to a person serving a mandatory life term. In fact, the sentences given to petitioners in this case clustered in the 25- to 27-year range." *Id.* at 188. "Thus, argue petitioners, since adherence to the SRA actually results in a longer period of incarceration before they can be considered for parole, the law which requires that adherence works to their disadvantage and is ex post facto." *Id.* This court rejected the petitioner's conclusion only because the old SRA sentences left some discretion—they would not *necessarily* become more harsh under SHB 1457. This court's reasoning, however, was based on the clear belief that the SRA itself was more harsh—and mandatorily so—than pre-SRA law.

sentences that should have been imposed and the SRA sentences that were illegally imposed are indistinguishable.

      ii.    Prejudice Means That Misinformation Stripped the Plea Process of a Knowing, Intelligent, and Voluntary Character, Not That the Result Was a Particular Term of Years

The majority also asserts that Yates alleged no other prejudice at all: "Yates does not address the issue of prejudice in his petition or reply—even though one of the State's primary arguments in its response is that his petition fails because it does not show actual and substantial prejudice." Majority at 7; *see also id.* at 8 ("Yates did not address prejudice in his petition or in his reply").

The majority errs on this point, too. Yates addressed prejudice in his PRP by describing the misinformation he received. PRP at 9-12. He did state that prejudice should be presumed, but he also explained that the misinformation concerned a critical "direct consequence" of his plea. PRP at 12-13. Yates then explained in detail, in a signed declaration submitted in support of his PRP, that he would not have accepted the plea agreement if he

---

How this would have affected Yates, in particular, however, might well be a factual question. If such facts are in dispute, they should be fleshed out at an evidentiary hearing under RAP 16.11(b), not assumed by this court. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-87, 828 P.2d 1086 (1992).

had been correctly informed—he stated under penalty of perjury that it affected his decision-making process. Pet'r's Suppl. Decl. (Decl. of Robert Yates ¶ 3) ("If I had been told that Counts I and II required indeterminate life sentences, I would not have pleaded guilty and would not have accepted the State's 'package deal.'").

The majority acknowledges that Yates submitted the supplemental declaration, explaining Yates's position that "he would not have taken the plea deal if he had known that the sentences for two of his murder charges were 20 years rather than what the law required: an indeterminate sentence with a minimum of 20 years." Majority at 8 (referencing Yates's declaration). The State provided no contrary declaration, affidavit, or statement of facts on this point. But, giving the State and the majority the benefit of the doubt, let us assume there is good reason to question Yates's version of the facts. We would then be faced with the question of what to do when the material facts—here, whether the misinformation affected Yates's decision to plead guilty—are in dispute. Under controlling precedent and court rules, the answer is that this court must refer the PRP to the superior court for a reference hearing under RAP 16.11(b), not summarily reject it. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886-87, 828 P.2d 1086

(1992) ("[T]he State must meet the petitioner's evidence with its own competent evidence. If [there are] material disputed issues of fact, then the superior court will be directed to hold a reference hearing. . . .").

The State, and the majority, discount this allegation of prejudice by saying it is not the kind of prejudice that counts: "[W]e do not attempt to look into the mind and motivations of the defendant when determining whether an error resulted in prejudice. Instead, we evaluate the *practical* effects that result from the error." Majority at 8 (emphasis added) (citation omitted) (citing *In re Pers. Restraint of Stockwell*, __ Wn.2d __, 316 P.3d 1007, 1014-15 (2014)). "In this case, there was no *practical* effect resulting from the error. Yates agreed to a sentence of 408 years in prison and he should have been sentenced to a minimum of 408 years with a potential extension to a life sentence." Majority at 8-9 (emphasis added).

As discussed above, it is factually incorrect to say there was no practical effect from the error.

It is also legally incorrect. It is the wrong definition of what "prejudice" means in this context. As I explained in my concurrence in *Stockwell*, controlling United States Supreme Court authority instead holds that misadvice in this context causes prejudice when it affects the criminal

defendant's decision-making process. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Controlling authority from this court says the same thing. *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 594, 741 P.2d 983 (1987). I acknowledge that a majority of this court recently retreated from that definition of "prejudice" in certain contexts. *Stockwell*, 316 P.3d 1007. But I believe that we are not free to retreat from United States Supreme Court authority on this point, particularly as it applies to Yates.

I therefore conclude that Yates has alleged prejudice as a matter of law, and also as a matter of fact.

B. *The Illegality of the Sentence Is a Separate Legal Claim, Cognizable for the First Time in This Timely PRP; Had Yates Requested Resentencing, It Would Require Relief without Any Additional Showing of Prejudice*

Yates's allegation that the sentence imposed was illegal is a separate claim. A claim that the sentence actually imposed was outside the court's power is separately cognizable in a PRP and warrants relief. In fact, this court did a voluminous analysis of this issue about a decade ago in *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002). The *Goodwin* court unanimously concluded that an erroneous sentence imposed without statutory authorization can be challenged via a PRP, even outside

the one-year time limit, and that the prisoner proving such a claim is entitled to relief. *Id.* at 873-77; *see also In re Pers. Restraint of Moore*, 116 Wn.2d 30, 803 P.2d 300 (1991).

Yates, however, asks this court to remand to the superior court to permit him to withdraw all of his "package" guilty pleas. PRP at 13. This remedy is not available to him. The remedy for the illegal sentences in *Goodwin* and *Moore* was resentencing—the petitioner in those cases did not seek to withdraw a plea. Yates would be entitled to resentencing had he requested it. But the illegality of the sentence does not, alone, allow Yates to withdraw his plea agreement.

> C. *The Retrospective Application of the Sentence Is a Separate Due Process Claim, Cognizable for the First Time in This Timely PRP; Had Yates Requested Resentencing, It Would Also Require Relief without Any Additional Showing of Prejudice*

Finally, the majority ignores Yates's claim that his SRA sentences on the two pre-SRA crimes violated the ex post facto and due process clauses of the state and federal constitutions. PRP at 9. A claim of such a constitutional violation is separately cognizable in a PRP. RAP 16.4(c)(6).

The ex post facto clause "'forbids the application [by the legislature] of any new punitive measure to a crime already consummated.'" *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072, 183 L. Ed. 2d 501 (1997)

- 10 -

(quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)); *see also* U.S. CONST. art. I, § 10, cl. 1; CONST. art. I, § 23. "A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective . . . ; and (3) disadvantages the person affected by it." *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991) (citing *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)). That test is satisfied here. The length and conditions of Yates's murder sentences are substantive, not merely procedural.[4] The SRA sentences were applied retrospectively to conduct occurring before the SRA's enactment. And, as discussed above, the two consecutive 20-year flat-time sentences likely disadvantaged Yates because he might have served legal sentences in 13 years, 4 months under the old law.[5] The legislature, however, is not at fault;

---

[4] *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 170, 949 P.2d 365 (1998) (in context of ex post facto challenge, changes to compel "application of determinate sentencing to a pre-SRA offender fundamentally alter[] the sentencing scheme and [we] hold the changes are substantive").

[5] *Cf. Powell*, 117 Wn.2d 175 (SHB 1457 not ex post facto as applied to prisoners who were not certified as parolable by superintendent of their prison on its effective date but was ex post facto as applied to prisoners certified as parolable before then); *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377-78, 996 P.2d 637 (2000) (addition of subsection (3) to RCW 9.95.009 does not violate ex post facto clause because the claim that it was disadvantageous was too speculative).

it was the sentencing court, not the legislature, that applied the SRA sentences retrospectively. But we have clearly held that similar rules apply to the courts: the due process clause forbids the application by the courts of any new punitive measure to a crime already consummated. *State v. Aho*, 137 Wn.2d 736, 741-42, 975 P.2d 512 (1999). Application of the SRA sentence for first degree murder to Yates's conduct, which occurred before the SRA was enacted, is therefore unconstitutional.

Finally, no additional prejudice need be shown on this claim. Imposing a new and more harsh sentence on a defendant whose crimes occurred before the new sentencing law is, alone, reversible error.[6]

The remedy for a sentence that violates ex post facto principles, however, is, in the circumstances of this case, the same as the remedy for an illegal sentence—resentencing. *See In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 168-69, 949 P.2d 365 (1998) (discussing petitioner's request for his sentencing to be based on law in place at the time). Yates did not request resentencing, and he is not entitled to withdraw his plea agreement on the basis of the due process clause violation at issue here.

---

[6] *See In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 725, 10 P.3d 380 (2000) ("Thompson is therefore entitled to relief from his sentence because he pleaded guilty to an offense which occurred before the effective date of the statute creating the offense.").

CONCLUSION

Yates raises three arguments: (1) that he is entitled to withdraw his plea because misinformation rendered his plea involuntary, (2) that his sentence was illegally imposed, and (3) that his sentence violates due process clause protections against retroactive application of laws by the judiciary. The majority addresses only one of those arguments on its merits—the involuntary plea argument—and holds that Yates cannot show prejudice because the sentence that should have been imposed and the sentence that was illegally imposed are both extremely long. But Yates has alleged prejudice of two sorts: he has alleged that the misadvice affected his plea, and he has alleged that the SRA sentence imposed results in a longer term of imprisonment than did the pre-SRA sentence that should have been imposed.

If there is any question about whether the illegal SRA sentence imposed on Yates was more harsh than a legal indeterminate sentence would have been despite the general differences between those two sentences summarized in Part (A)(i) above, that is a factual question about how Yates might have fared in a parolability hearing, which must be resolved via a reference hearing under RAP 16.11(b). And the United States Supreme

Court has held that the application of parole laws by parole boards, in practice, *can* be considered in determining whether changes in those laws would have been more or less harsh in practice.[7]

Yates has also proved his two other claims. The only remedy available for those two errors, however, is resentencing, and Yates has not requested this; thus he is not entitled to relief on those two claims.

I would therefore remand this case to the trial court with instructions to hold a reference hearing under RAP 16.11(b) as required by *Rice*, 118 Wn.2d at 885-87, to determine the factual issues identified above in Part A: (1) whether Yates can prove by the appropriate legal standard that a legal pre-SRA sentence would have been shorter than the sentence he actually received, and (2) whether the misinformation Yates received about his sentence actually affected his decision to plead guilty.

I respectfully dissent.

---

[7] *Garner v. Jones*, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000); *Morales*, 514 U.S. 499 (ex post facto clause context).