# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 53897-1-II |
| MARTAVIS TRAMAIN SIMPSON, | |
| Petitioner. | UNPUBLISHED OPINION |

GLASGOW, J.—Martavis Tramain Simpson pleaded guilty to nine counts stemming from two armed robberies, including four counts of first degree robbery, one count of first degree burglary, two counts of second degree assault, one count of first degree unlawful possession of a firearm, and one count of unlawful imprisonment. He stipulated to his criminal history and to an offender score of 9+ on each count. He was sentenced to 25 years and 9 months. Simpson filed a timely CrR 7.8 motion to withdraw his guilty plea, which was transferred to this court as a personal restraint petition (PRP).

Simpson argues that his guilty plea was not knowing, intelligent, and voluntary because the plea statement misstated the charges, the State's sentencing recommendation was confusing, his offender score was miscalculated, and he received ineffective assistance of counsel. Simpson contends the plea statement inaccurately stated that the court could revoke his driver's license due to his convictions. Simpson further asserts that the trial court lacked jurisdiction because the plea statement did not specify the county in which the crimes occurred.

Simpson's arguments about errors in the plea statement and offender score are either barred by his stipulation or are not supported by evidence in the record, nor has Simpson established

prejudice. Simpson's trial counsel was not ineffective. Simpson has not established error or prejudice regarding the warning about his driver's license, and the trial court did not lack jurisdiction. We deny Simpson's PRP.

FACTS

In December 2017, Martavis Simpson committed two armed robberies. Simpson robbed one person using a gun. A few days later, Simpson and a codefendant robbed an electronics store at gunpoint. Simpson ordered three store employees into the inventory room at gunpoint and told them to fill a duffle bag with cell phones and other items. Simpson and his codefendant shut the employees in the inventory room, left the store with 64 devices worth about $600 each, and drove away in a rental car.

Simpson was initially charged with three counts of first degree kidnapping, three counts of first degree robbery, three counts of second degree assault, one count of first degree burglary, and one count of unlawful possession of a firearm. Each offense except unlawful possession of a firearm carried a firearm sentencing enhancement under RCW 9.94A.533(3). Simpson had a prior second degree assault conviction with a firearm enhancement in 2002, so under RCW 9.94A.533(3)(d) each firearm enhancement would be doubled. Simpson faced 88 years from firearm enhancements alone, which would run consecutive to his other sentences under RCW 9.94A.533(3)(e). RCW 9.94A.533(3)(a)-(b); RCW 9A.40.020(2); RCW 9A.56.200(2); RCW 9A.36.021(2)(a); RCW 9A.52.020(2).

The State and Simpson negotiated a plea agreement. In an amended information, the State charged Simpson with four counts of first degree robbery, one count of first degree burglary, two counts of second degree assault, one count of first degree unlawful possession of a firearm, and

one count of unlawful imprisonment. The State included firearm enhancements (doubled under RCW 9.94A.533(3)(d)) for each of the two second degree assault charges and the unlawful imprisonment charge.

Simpson agreed to plead guilty to the crimes charged in the amended information, and he stipulated to his criminal history and an offender score of 9+ for each of the 9 counts. The State agreed to recommend 129-month concurrent sentences for the first degree robbery convictions and concurrent lower sentences for the remaining crimes, plus 180 months for the firearm enhancements, resulting in a total sentence of 309 months (25 years and 9 months).

Simpson signed a plea statement affirming that he understood the terms of the plea and had discussed the terms with his attorney. When describing the counts of assault, the plea statement contained the handwritten words "Assault 2 w/FASE (x2)." Clerk's Papers (CP) at 27.

A plea hearing was held in the Pierce County Superior Court where Simpson was represented by counsel. The trial court conducted a colloquy on the record. The trial court told Simpson that it was going to ask questions to confirm that Simpson understood the terms of the plea. CP at 45-46. The trial court stated, "If I ask you a question [and] you're . . . not sure what I am asking or you want to have conversation with [your attorney] about what we're doing today, I'd like you to interrupt me; okay?" CP at 46. The trial court then asked Simpson, among other things, if he understood the charges and their sentencing consequences. The trial court asked if Simpson had discussed the amended information and plea statement with his lawyer. Simpson responded "yes" to each question and confirmed that he understood. CP at 45-59.

The trial court also clarified a scrivener's error in the State's handwritten sentencing recommendation on the guilty plea statement. The sentencing recommendation stated, "Counts I-

VI: 129 months." CP at 30. The next line then listed the sentencing recommendations for count V, counts VI-VII, count VIII, and count IX. The trial court noticed this error and stated, "The recommendation is Counts 1 through -- says 6 but I think it means 4." CP at 49. The State confirmed that where the plea statement stated "I-VI" it actually meant "I-IV." CP at 49. The trial court listed the State's sentencing recommendations for each of the charges and asked if Simpson had any questions. Simpson said he had no questions.

Simpson pleaded guilty to all nine counts. The trial court accepted the plea, finding Simpson was entering his plea freely, voluntarily, and with an understanding of all its consequences. Based on the stipulated offender score of 9+ for each count, the trial court sentenced Simpson to the State's recommended sentence of 25 years and 9 months.

Simpson did not appeal. Within a year of entry of his judgment and sentence, Simpson filed a motion to withdraw his guilty plea. The trial court transferred Simpson's motion to this court for consideration as a PRP in accordance with CrR 7.8(c)(2).

ANALYSIS

A.    PRP Standard

"Once a CrR 7.8 motion is transferred to the Court of Appeals, the motion becomes subject to more rigorous pleading standards applicable to personal restraint petitions, as set forth in RAP 16.7." *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 639, 362 P.3d 758 (2015). "Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A petitioner must establish that their restraint was the product of either a constitutional error that caused "actual and substantial prejudice" or a

nonconstitutional fundamental defect that "'inherently result[ed] in a complete miscarriage of justice.'" *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016) (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)).

When considering whether a constitutional error alleged in a PRP was prejudicial, courts look to "the practical effects that result from [any] error." *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 41, 321 P.3d 1195 (2014). The petitioner has the burden of proving both error and prejudice by a preponderance of the evidence under the totality of the circumstances. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010); *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013).

A petitioner must "state with particularity facts which, if proven, would entitle [them] to relief" and identify the evidence supporting the factual allegations. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992); *Monschke*, 160 Wn. App. at 488; *see also* RAP 16.7(a)(2)(i). If the allegations are based on matters outside the existing record, the petitioner must demonstrate competent, admissible evidence to establish the facts entitling them to relief. *Rice*, 118 Wn.2d at 886.

B.     Knowing, Intelligent, and Voluntary Guilty Plea

Simpson argues that his guilty plea was not knowing, intelligent, and voluntary because alleged errors in his plea statement prevented him from knowing the "consequences of his plea." CP at 8. Simpson also contends the State miscalculated his offender score. We disagree.

A claim that a guilty plea is involuntary alleges a constitutional error. *State v. Buckman*, 190 Wn.2d 51, 57 n.2, 409 P.3d 193 (2018). "'Due process requires . . . a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.'" *Id.* at 59

(quoting *State v. A.N.J.*, 168 Wn.2d 91, 117, 225 P.3d 956 (2010)). "[T]he person pleading guilty [must] understand[] the plea's consequences, including possible sentencing consequences." *Id.* "'[M]isinformation regarding a direct consequence of the plea, regardless of whether the actual sentencing range is lower or higher than anticipated,'" can render the plea involuntary. *Id.* (quoting *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006)).

"When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). If the trial court "'inquire[s] orally of the defendant and satisfies [itself] on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable.'" *State v. Knotek*, 136 Wn. App. 412, 428-29, 149 P.3d 676 (2006) (quoting *State v. Perez*, 33 Wn. App. 258, 262, 654 P.2d 708 (1982)).

To establish actual and substantial prejudice in the context of a constitutionally defective guilty plea, the petitioner must show "that the defendant would more likely than not have refused to plead guilty and would have insisted on going to trial." *Buckman*, 190 Wn.2d at 65.

1.      Description of charges in plea statement

Simpson claims the plea statement misstated the charged crimes because the description of charges "lists 'Assault x2' without reference to degree of assault." CP at 6.

Simpson's plea statement accurately states the degree of assault Simpson was charged with. The handwritten portion of the form that Simpson refers to contains the words "Assault 2 w/FASE (x2)." CP at 27. This statement shows that Simpson was charged with two counts of second degree assault, with a firearm sentencing enhancement, which accurately states the charges in the amended information. At the plea hearing, the State said that Simpson was charged with "two

6

counts of assault in the second degree." CP at 43-44. The trial court repeated the charges, confirming Simpson understood.

We hold that there was no error with regard to the description of the crimes with which Simpson was charged and the handwritten description of the charges in the plea statement did not undermine the knowing, intelligent, and voluntary nature of the plea.

2.      State's sentencing recommendation

Simpson argues that the State's sentencing recommendation, which was handwritten on the plea statement and contained a scrivener's error, was "internally inconsistent and confusing" and was a constitutional error that prevented him from making a knowing, intelligent, and voluntary guilty plea. CP at 6-7. Although the State clarified its recommendation at the plea hearing, Simpson argues that this was too late to correct the error.

We conclude that the single scrivener's error was not a constitutional error. It was not so confusing that Simpson could not have understood the State's sentencing recommendation. First, Simpson signed the plea statement certifying that he entered the plea voluntarily, had discussed the terms with his lawyer, and had no further questions for the judge. This creates a presumption of voluntariness. *See Smith*, 134 Wn.2d at 852. In addition, the judge orally noted the scrivener's error on the record and recited the correct sentencing recommendation for each count. Neither Simpson nor his counsel stopped the proceedings to discuss the error. Simpson confirmed at the colloquy that he understood the crimes he was pleading guilty to and the State's sentencing recommendation. This made the presumption of voluntariness "well nigh irrefutable." *See Knotek*, 136 Wn. App. at 428-29. The scrivener's error does not defeat the knowing, intelligent, and voluntary nature of the plea.

Simpson also has not established that he was prejudiced in any way by the scrivener's error. Simpson never argues that he would not have pleaded guilty but for the scrivener's error in the plea statement. Simpson asserts only that the clarification at the plea hearing came "too late." CP at 6. But the purpose of a plea hearing is to ensure that the defendant pleads guilty "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). The trial court's colloquy was sufficient to eliminate any confusion that could have arisen from the scrivener's error, and Simpson said that he was not confused. Simpson also received quite a favorable plea deal because he avoided 88 years in sentencing enhancements alone. *See Buckman*, 190 Wn.2d at 62.

We hold that the scrivener's error was not a constitutional error and it did not undermine Simpson's knowing, intelligent, and voluntary plea, nor has he shown actual and substantial prejudice.

### 3. Offender score

Simpson argues that two of his prior felonies should not have counted toward his offender score because they had washed out. He also argues that several of his current offenses arising from the robbery of the electronics store should have counted as the same criminal conduct for offender score purposes.

"'[A] sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice.'" *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 365, 402 P.3d 266 (2017) (alteration in original) (quoting *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002)). If an offender score error "affects the applicable sentencing range, resentencing is required." *State v. Kilgore*, 167 Wn.2d 28, 41, 216 P.3d 393 (2009). Error

may exist "even where the sentence imposed is actually within the correct standard range," if the trial court "indicated its intent to sentence at the low end of the range, and the low end of the correct range is lower than the low end of the range determined by using the incorrect offender score." *Goodwin*, 146 Wn.2d at 868.

Here, Simpson stipulated to his criminal history, agreeing that his prior felonies did not wash out. He also stipulated to an offender score of 9+ for each current offense. In his stipulation, Simpson waived the "right to appeal or seek redress via any collateral attack based upon the [stipulated] criminal history and/or offender score calculation." CP at 64.

A defendant cannot waive the ability to challenge an offender score that exceeds the sentencing authority of the trial court. *See Goodwin*, 146 Wn.2d at 873-75. "[W]aiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence." *Id.* at 874; *see also State v. Hernandez*, 172 Wn. App. 537, 545, 290 P.3d 1052 (2012). But waiver may prevent collateral review where a defendant stipulates to particular facts, like the specifics of their criminal history. *Goodwin*, 146 Wn.2d at 874.

Simpson argues that his offender score was miscalculated in two ways. First, Simpson contends that his prior adult felonies occurred "17 years prior to sentencing in this matter," and so these felonies should have washed out for offender score purposes. CP at 7. Second, Simpson argues that his current convictions for first degree burglary, second degree assault, unlawful possession of a firearm, and unlawful imprisonment should have been considered the same criminal conduct for offender score purposes.

Under *Goodwin,* these are not arguments that Simpson can raise directly in light of his stipulation, which waived his right to later challenge the calculation of his offender score. 146

9

Wn.2d at 875. In *Goodwin*, the court concluded that a washout issue raised in that case was not waived, but that argument was based on a question of law—whether a statutory amendment revived juvenile convictions that had already washed out. *Id.* at 864-65, 872-76. Here, Simpson stipulated, as a matter of fact, that his prior convictions had washed out and the issues he raises in his petition are factual. Under *Goodwin*'s reasoning, factual stipulations are subject to waiver. *Id.* at 874 ("waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion"). Simpson's washout arguments challenge the factual basis for including his prior convictions as part of his offender score, an issue he has waived. Similarly, his stipulation precludes him from arguing that two or more convictions constituted the same criminal conduct because "the same criminal conduct statute involves both factual determinations and the exercise of discretion." *Id.* at 875.

However, because Simpson also raises the offender score arguments in the context of his ineffective assistance of counsel claim, we must consider on the merits whether Simpson's offender score was miscalculated. *See Hernandez*, 172 Wn. App. at 545.

With regard to his washout arguments, Simpson had five prior felonies, but the State relies only on two adult class B violent felony convictions that occurred in 2002. Under RCW 9.94A.525(2)(b), neither of the 2002 violent adult felony offenses washed out because ten years did not elapse before Simpson's next criminal conviction in 2009. Under RCW 9.94A.525(8), each of Simpson's 2002 felonies was worth two points. Therefore, Simpson had at least four points based on his prior criminal history.

With regard to his current convictions, there were four different robbery victims, so each of the four robbery counts had to be treated as separate criminal conduct under RCW

9.94A.589(1)(a). Each robbery conviction is worth two points. RCW 9.94A.525(8). Accordingly, from the robberies, Simpson had at least six points when scored against the other robberies, and at least eight points when scored against the nonrobbery counts.

Together, Simpson's points resulting from his prior criminal history (four points) and his robberies (six or eight points) totaled, at the very least, ten points for each conviction. Under RCW 9.94A.510, any offense with a seriousness level of IX, including first degree robbery, and an offender score of at least nine points yields a standard range sentence of 129-171 months. *See* CP at 63; *see also* RCW 9.94A.515. Simpson would have been subjected to the same standard range of 129-171 months for the robberies even if some of his other crimes were the same criminal conduct. And Simpson's 129-month sentence is already at the low end of the standard range, so any reduction in his offender score resulting from a same criminal conduct analysis would not have led the trial court to impose a lower standard range sentence.

Further, there is no evidence that Simpson was prejudiced by any alleged error. Simpson did not submit a declaration or affidavit, signed under penalty of perjury, asserting that if his offender score had been different he would not have pleaded guilty to the crimes charged in the amended information. Simpson's plea deal reduced by decades the potential prison time that Simpson was facing. We cannot presume that he would have rejected this plea deal had his offender score been different.

We hold that there was no lack of clarity about crimes charged or their sentencing consequences, there were no inconsistencies in the sentencing recommendation, nor was there a miscalculation of Simpson's offender score sufficient to defeat the knowing, intelligent, and voluntary nature of his plea. None of these claims entitles Simpson to relief on the merits.

11

C.      Ineffective Assistance of Counsel

Simpson argues that he received ineffective assistance of counsel at the plea stage, preventing him from pleading knowingly, intelligently, and voluntarily. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Simpson must show that his counsel's performance was deficient and that counsel's performance prejudiced him. *Grier*, 171 Wn.2d at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

A petitioner must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). We presume reasonableness and apply "exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To prove prejudice, a petitioner must show that, but for counsel's deficient performance, "there is a reasonable probability that the result of the proceeding would have been different." *Lui*, 188 Wn.2d at 538.

1.      Failure to assist Simpson in deciding whether to plead guilty

Simpson claims that his counsel did not adequately advise him about the consequences of pleading guilty because "[t]he full sentencing consequences of the plea [were] unclear on the face of the plea form," apparently due to the scrivener's error. CP at 10.

As explained above, the sentencing recommendation was clear on the face of the plea statement. Thus, this argument also fails as a basis for an ineffective assistance claim.

2.      Failure to investigate

Simpson argues that his trial counsel was ineffective because he did not investigate the case or interview witnesses before advising Simpson to plead guilty.

Ineffective assistance of counsel claims may be based on counsel's failure to investigate a potential defense. *See, e.g.*, *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). The petitioner "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *Id.*

Neither Simpson nor his trial counsel prepared an affidavit or signed a declaration supporting Simpson's argument that his counsel's performance was deficient due to failure to investigate. RAP 16.7(a)(2)(i); *Monschke*, 160 Wn. App. at 488-89. Simpson has not shown a reasonable likelihood that additional investigation would have produced useful information. *See Davis*, 152 Wn.2d at 739. Simpson has not identified which witnesses counsel should have interviewed, and he has not explained what they would have offered. *See id*. Simpson has failed to provide competent, admissible evidence sufficient to make a prima facie showing that his counsel was deficient by failing to investigate or interview witnesses. *See Rice*, 118 Wn.2d at 886.

3.      Failure to object to offender score

Simpson argues that the State miscalculated his offender score and that his counsel was constitutionally deficient by agreeing to the State's calculation of his offender score.

As explained above, Simpson stipulated to an offender score of 9+. Because his offender score was over 9 points, counsel was not deficient by agreeing to the offender score. Simpson

could not have been subject to a lower standard range sentence than the 129-171 month range for his robbery convictions, and he was sentenced to 129 months. RCW 9.94A.510. Simpson has not shown prejudice resulting from any errors in his offender score. Simpson was also not prejudiced by his attorney's decision not to object to Simpson's offender score.

We hold that Simpson is not entitled to relief on the basis of his ineffective assistance of counsel arguments.

D.  Other Arguments

1.  Driver's license consequences

Simpson claims that "the guilty plea form improperly indicate[d] that [he would] lose his [driver's] license as a result of his conviction" in this case, rendering his guilty plea unknowing, unintelligent, an involuntary. CP at 21 (bold type and underscore omitted). Simpson claims his license could not have been revoked due to the crimes to which he pleaded guilty. We reject this argument.

Under RCW 46.20.285(4), a defendant convicted of "[a]ny felony in the commission of which a motor vehicle is used" shall have their driver's license revoked for one year. Under *State v. Batten*, using a vehicle as "the repository for the illegal substance . . . is a sufficient relationship between the contraband and the vehicle" to invoke RCW 46.20.285(4). 140 Wn.2d 362, 366, 997 P.2d 350 (2000).

Simpson used a rental car to store, conceal, and transport stolen merchandise for resale. The car also facilitated Simpson's flight. The relationship between the vehicle and the crimes was sufficient for the trial court to revoke Simpson's driver's license under RCW 46.20.285(4). *See id.*

Simpson offers no declaration or other evidence establishing that whether his license would be revoked had any bearing on his decision to plead guilty. This claim fails.

2.      Jurisdiction

Simpson claims that he is entitled to withdraw his guilty plea because "[t]he guilty plea form fails to state the jurisdiction in which the crime was alleged to have been committed" by not stating the county in which the crimes occurred. CP at 24 (bold type and underscore omitted). We reject this argument.

Article IV, section 6 of the Washington Constitution provides, "The superior court shall have original jurisdiction . . . in all criminal cases amounting to felony." Under RCW 9A.04.030(1), state courts have jurisdiction over people who commit crimes in the State. The State has the burden of proving that jurisdiction is proper. *State v. L.J.M.*, 129 Wn.2d 386, 392, 918 P.2d 898 (1996). Here, Simpson explicitly stated that he committed the crimes to which he pleaded guilty in Washington. Accordingly, jurisdiction was proper.

CONCLUSION

We deny Simpson's PRP. Simpson's plea was knowing, intelligent and voluntary, he has not shown ineffective assistance of counsel, and his remaining claims fail.

No. 53897-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Cruser, J.

16