# NOTICE:  SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE  FEB 01 2018

_____ for _____ CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
| --- | --- | --- |
| STATE OF WASHINGTON, | ) | No. 93545-9 |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | Filed   FEB 01 2018 . |
| BRIAN WALLACE BUCKMAN, | ) | |
| | ) | |
| Petitioner. | ) | |

WIGGINS, J.— Brian Buckman pleaded guilty to second degree rape of a child. RCW 9A.44.076. After sentencing, Buckman learned that he had been misinformed of the sentencing range that applied to him. Based on this misinformation, Buckman now seeks to withdraw his plea as involuntary. Because Buckman's motion to withdraw is a collateral attack on his judgment and sentence, he must show both error—here, that his plea was involuntary—as well as actual and substantial prejudice resulting from that error.

We conclude that Buckman's plea was involuntary because he was misinformed that he might be sentenced to life in prison despite the fact that the statute provided that a sentence of life in prison could not apply to a 17-year-old, Buckman's

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

age at the time of the offense. But we also hold that he is not entitled to withdraw his plea because he fails to show that the misinformation provided at the time of his plea caused him actual and substantial prejudice. As a result, we deny the motion to withdraw and remand for resentencing only.

## FACTS

When Buckman was 17 years old, he had a sexual relationship with 13-year-old K.B.S. Law enforcement learned of the relationship when Buckman was 19; Buckman was subsequently charged in superior court with second degree rape of a child. In a written statement, Buckman acknowledged "dating" K.B.S. and stated that he had not understood their relationship to be unlawful. Buckman emphasized that K.B.S.'s parents had consented to the relationship. Buckman was told that his crime carried the possibility of life in prison. Under the statutes, second degree rape of a child has a sentence range of 86 to 114 months with a maximum term of life, as well as lifetime community custody. RCW 9.94A.507(5), .510, .515; RCW 9A.20.021(a), .076(2).

Buckman was also told about the possibility of a special sex offender sentencing alternative (SSOSA) under RCW 9.94A.670. Under a SSOSA, the court sentences a qualifying defendant to a term of confinement up to 12 months followed by a term of community custody, and imposes appropriate conditions such as undergoing appropriate sex offender treatment. If the defendant violates the conditions of community custody, the court can modify the conditions or revoke the suspended sentence. *Id.*

*State v. Buckman (Brian Wallace)*
No. 93545-9

The record before us does not disclose the discussions that led to Buckman's guilty plea. However, Buckman's sworn statement in support of his motion to set aside his guilty plea includes two relevant statements. First, Buckman asserts that he was told that the maximum sentence for his crime was life in prison and that "[u]pon this information, Buckman had pleaded guilty in exchange for a SSOSA sentence under RCW 9.94A.670." Clerk's Papers (CP) at 88. Second, the misinformation about his possible sentence "had forced his decision making to plead guilty for a lighter sentence under SSOSA's RCW 9.94A.670." CP at 90.

On Buckman's plea form and in his colloquy with the court, the State and the trial court told him that his crime carried the possibility of life in prison. Under the statutes, second degree rape of a child has a sentence range of 86 to 114 months with a maximum term of life, as well as lifetime community custody. RCW 9.94A.507(5), .510, .515; RCW 9A.20.021(a), .076(2). However, the statute specifically does not apply to individuals who are "seventeen years of age or younger at the time of the offense." RCW 9.94A.507(2). Buckman was only 17 at the time he had a sexual relationship with K.B.S. Instead of the possibility of life in prison and lifetime community custody, he was subject to a maximum sentence of 114 months and a maximum of only 3 years of community custody. RCW 9.94A.515 (rape of a child in the second degree is a level XI crime), .510 (seriousness level XI and an offender score of I yields a sentence range of 86 to 114 months); RCW 9.94A.701(1)(a).

*State v. Buckman (Brian Wallace)*
No. 93545-9

Buckman was ultimately sentenced under the SSOSA. Buckman served six months in jail and was released on lifetime community custody. Buckman violated his community custody provisions and was resentenced to 114 months. At resentencing, Buckman's new attorney realized that Buckman, who was not yet 18 years old at the time of the offense, should not have been sentenced under RCW 9.94A.507.

Buckman filed a motion to modify or correct his judgment and sentence, then filed a motion to withdraw his plea.[1] In seeking to withdraw his plea, Buckman argued that he would "never have pled guilty" had he been properly informed that he was not subject to possible life imprisonment. Suppl. Br. of Pet'r (Buckman Br. Pro Se) at 7. The State conceded that he was improperly sentenced.

Disagreeing with both parties, the trial court held that Buckman had been properly sentenced. "Seventeen years of age or younger," the court concluded, means on or before a person's 17th birthday. Because Buckman had passed his 17th birthday (but was not yet 18) at the time of the offense, the court concluded that Buckman was not "seventeen years of age or younger" and that RCW 9.94A.507 applied. The court thus denied both Buckman's motion to correct his sentence and his motion to withdraw his plea.

---

[1] The motions were brought after the judgment and sentence were entered and were thus collateral attacks subject to CrR 7.8. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 595, 603, 316 P.3d 1007 (2014) ("Under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea where withdrawal is necessary to correct a manifest injustice. However, if the motion for withdrawal is made after the judgment, it is governed by CrR 7.8(b)."). Because Buckman's direct appeal was not yet mandated when the motion to withdraw his plea was filed, his collateral attack was timely.

*State v. Buckman (Brian Wallace)*
No. 93545-9

The Court of Appeals reversed the trial court's statutory interpretation, holding that Buckman had been improperly sentenced. *State v. Buckman*, 195 Wn. App. 224, 229-30, 381 P.3d 79 (2016). However, the court found that Buckman had been properly informed as to the consequences of his plea for two reasons: First, the trial court told Buckman the correct sentencing range (86 to 114 months). RCW 9.94A.515 (rape of a child in the second degree is a level XI crime), .510 (seriousness level XI and an offender score of I yields a sentence range of 86 to 114 months). Second, the trial court accurately told Buckman the maximum penalty for the crime charged—even though that maximum was not applicable to someone, like Buckman, who was less than 18 years old when the offense occurred. 195 Wn. App. at 230. Thus, the Court of Appeals concluded that Buckman had been properly informed, found that Buckman's plea was knowing and voluntary, and affirmed the trial court's denial of Buckman's motion to withdraw his plea. The court then remanded for resentencing only. *Id.*

Buckman thereafter filed a motion for discretionary review with this court, which we granted.

## STANDARD OF REVIEW

The standard of review in this case is de novo. Normally, we review CrR 7.8 motions to withdraw a guilty plea for abuse of discretion. *See State v. Hardesty*, 129 Wn.2d 303, 915 P.2d 1080 (1996) (applying an abuse of discretion standard when the decision involved factual findings). However, the request for withdrawal in this case is based on a claimed constitutional error and resulting prejudice—both of which are

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

State v. Buckman (Brian Wallace)
No. 93545-9

issues that we review de novo.[2] *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d

207 (2012); *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 488, 276 P.3d 286

(2012) (Prejudice "is a mixed question of law and fact" that we review de novo.).[3]

ANALYSIS

Buckman argues (1) that his plea is involuntary because he was improperly

informed of his sentencing consequences and (2) that this error was prejudicial. *See*

Buckman Br. Pro Se at 7 ("It is actual and substantial prejudice to accept a plea deal

on the belie[f] that if you don't plead guilty there is a possibility you'll face the rest of

your life in prison.").

Because Buckman was misinformed of his possible sentencing consequences,

we hold that his plea was involuntary. However, Buckman fails to show that a rational

person in his circumstances would have declined to plead guilty and would more likely

---

[2] The Court of Appeals specifically held "that the trial court did not abuse its discretion in denying Buckman's motion to withdraw his guilty plea." *Buckman*, 195 Wn. App. at 230. A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). However, as evidenced by the Court of Appeals' analysis, Buckman's motion rested solely on a constitutional question—whether his plea was involuntary—which we review de novo without giving deference to the trial court's ruling.

[3] Reviewing courts vary in their willingness to engage with the factual aspects of prejudice. *Compare United States v. Rodriguez-Vega*, 797 F.3d 781, 790 (9th Cir. 2015) (concluding that sufficient "facts demonstrate[d] that [the defendant] placed a particular emphasis on preserving her ability to remain in the United States," demonstrating prejudice even absent an evidentiary hearing before the trial court), *with Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) ("Because [the defendant] alleged facts that, if true, would prove . . . that he was prejudiced . . . [the defendant] is entitled to an evidentiary hearing."). This court has previously granted no deference to claims of prejudice at the guilty plea stage because prejudice does not involve a subjective or factual inquiry. *See Stockwell*, 179 Wn.2d at 602; *see also In re Pers. Restraint of Yates*, 180 Wn.2d 33, 40, 321 P.3d 1195 (2014) (citing *Stockwell*).

page 6 of 23

*State v. Buckman (Brian Wallace)*
No. 93545-9

than not have gone to trial; instead, he merely asserts without explanation that he would not have pleaded guilty. Because Buckman's prejudice claim is unsupported by argument and because it makes a subjective statement unsupported by evidence, Buckman fails to meet his burden and fails to adequately show prejudice.

We therefore hold that Buckman's plea was involuntary, but that Buckman failed to show prejudice arising from the error. We affirm the Court of Appeals on this basis and remand for resentencing.

I.    <u>Buckman's Plea Was Involuntary Because He Was Misinformed regarding His Possible Sentencing Consequences</u>

"Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily." *State v. A.N.J.*, 168 Wn.2d 91, 117, 225 P.3d 956 (2010). A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 594-95, 316 P.3d 1007 (2014). "[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence of the plea, regardless of whether the actual sentencing range is lower or higher than anticipated." *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006).

Here, Buckman argues that his plea was involuntary because he was misinformed of his possible sentencing consequences. *See* Buckman Br. Pro Se at 3. The Court of Appeals disagreed, concluding that Buckman was adequately informed because he was told both the correct sentencing range and the correct maximum punishment for the crime charged—even though those statutory

*State v. Buckman (Brian Wallace)*
No. 93545-9

consequences were not applicable to Buckman. *Buckman*, 195 Wn. App. at 230. We agree with Buckman.

Buckman was plainly misinformed in two key respects. First, Buckman was told "that the maximum penalty *here* is life in prison . . . ." Verbatim Report of Proceedings (Jan. 26, 2012) at 3 (emphasis added). This statement did not set forth the possible sentencing consequences for an abstract third party; it set forth the consequences for Buckman. And this assertion was incorrect as to Buckman; he was not subject to life in prison. That a hypothetical third party charged with the same crime might face life in prison is irrelevant. Second, Buckman was misinformed that he faced lifetime community custody. He did not; his proper community custody term was a maximum of three years. RCW 9.94A.701(1)(a). Thus, Buckman was misinformed of his possible sentencing consequences and this misinformation rendered Buckman's plea involuntary. *Mendoza*, 157 Wn.2d at 591.

Whether this constitutional error was prejudicial, however, is a separate question. As neither the trial court nor the Court of Appeals found constitutional error, no court has yet considered prejudice.[4]

---

[4] The State suggests that the trial court "did not actually determine the motion to withdraw [Buckman's] guilty plea." Resp't's Suppl. Br. at 16. The State concludes that we must therefore "remand to the trial court for a full determination of the motion to withdraw the guilty plea." *Id.* We disagree. The court denied Buckman's motion, giving us a decision to review. Because we proceed under de novo review in these particular circumstances, absence of reasoning in the trial court's denial of Buckman's motion does not foreclose our review or require remand for a reference hearing. *See supra* Standard of Review.

*State v. Buckman (Brian Wallace)*
No. 93545-9

II.   Buckman Does Not Meet His Burden To Show That He Was Actually and Substantially Prejudiced

A motion to withdraw a plea after judgment has been entered is a collateral attack.[5] On collateral review, when the claimed error is "a misstatement of sentencing consequences," we require the petitioner to show "actual and substantial prejudice." *Stockwell*, 179 Wn.2d at 598-99. The meaning of "actual and substantial prejudice" has evolved over decades of decisions by this court, settling into the clear and stable definition we use today: the petitioner must show that the outcome of the guilty plea proceedings would more likely than not have been different had the error not occurred. Our path to this rule unfolded as follows.

A. *For over Three Decades, This Court Has Required Collateral Attacks To Show Both Error and Prejudice*

In 1982, we stated that "to prevail in a collateral attack, a petitioner must show that more likely than not he was prejudiced by the error." *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 826, 650 P.2d 1103 (1982). In *Hagler*, however, we were concerned with prejudice at trial, not at the guilty plea stage. *Id.* at 827 (petitioners sought relief based on jury instructions).

In two 1987 cases, this court said in dicta that a constitutionally invalid plea constitutes prejudice at the guilty plea stage. *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 741 P.2d 983 (1987); *In re Pers. Restraint of Montoya*, 109 Wn.2d 270, 744 P.2d 340 (1987). But in both cases, we found no constitutional error and thus did not need

---

[5] *See supra* note 1.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to consider the question of prejudice.[6]  Since we did not find any constitutional error in either case, our discussions of prejudice in both cases were unnecessary to the outcome.

In subsequent years we clarified that on collateral review, the defendant must show some practical effect caused by a claimed error; a constitutional error generally does not, on its own, constitute prejudice.  In *In re Personal Restraint of Cook*, we emphasized that in a collateral attack on a conviction, appellate courts decline to take up a claimed constitutional error where the petitioner fails to demonstrate "that the alleged error gives rise to actual prejudice." 114 Wn.2d 802, 813, 792 P.2d 506 (1990). And in *In re Personal Restraint of St. Pierre*, we disavowed past dicta suggesting, as *Hews* and *Montoya* did, that constitutional errors are presumptively prejudicial on collateral attack.  118 Wn.2d 321, 328, 823 P.2d 492 (1992).  On collateral review, we concluded, mere error is not enough.  *Id.*

Still, we had not yet clearly articulated what "prejudice" means at the guilty plea stage—only that this elusive prejudice must be distinct from the constitutional error.  Our holding in *In re Personal Restraint of Riley* filled this definitional gap. 122 Wn.2d 772, 863 P.2d 554 (1993).

---

[6] In *Hews*, we said that "actual prejudice" occurred when a plea was "constitutionally invalid." 108 Wn.2d at 588-89.  Yet we found no constitutional error, instead holding that the petitioner's plea "satisfied constitutional requirements." *Id.* at 597.  Similarly, in *Montoya*, we stated that "[a] constitutionally invalid guilty plea gives rise to actual prejudice." 109 Wn.2d at 277.  In *Montoya*, however, we found no constitutional error, instead holding that the defendant made "a knowing, voluntary and intelligent choice" in entering his plea. *Id.* at 282.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We clarified that the court will use the *Strickland*[7] standard of proof when a petitioner claims that inadequate assistance of counsel led to a defective plea agreement. *Strickland* established a two-pronged test of inadequate assistance: a performance prong and a prejudice prong. 466 U.S. at 687. In *Riley*, the petitioner claimed to have been misinformed of the consequences of his plea and further claimed that but for the error, he would not have pleaded guilty. 122 Wn.2d at 779. We adopted the federal standard that the alleged prejudice must be proved by a "reasonable probability": "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for [the alleged error], he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 780-81 (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). Applying this standard, we held that petitioner's "bare allegation that [he] would not have pleaded guilty if he had known all of the consequences of the plea is not sufficient to establish prejudice." *Id.* at 782. We further noted that the petitioner appeared to have suffered no ill effects: he received a favorable plea deal on "the low end of the correct sentencing range" and "probably benefited. . . rather than being prejudiced in any way." *Id.* Thus, we clearly required something more than a mere error, and more than error coupled with a bare assertion of prejudice.[8] In the context

---

[7] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)

[8] Some courts have expanded the definition of a "different outcome" to include the possibility of achieving a more favorable plea, particularly where sentencing entails deportation consequences. *See, e.g., Rodriguez-Vega*, 797 F.3d at 788 ("A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a

State v. Buckman (Brian Wallace)
No. 93545-9

of a guilty plea, that meant showing that the petitioner would have refused to plead guilty and instead would have insisted on proceeding to trial.[9] Since *Riley*, we have continued to require proof of actual and substantial prejudice. *See, e.g., Stockwell*, 179 Wn.2d at 596-97. And we have continued to apply the reasonable probability standard in collateral challenges based on inadequate assistance of counsel.[10] *See, e.g., State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015) ("To show prejudice, the appellant need not prove that the outcome would have been different but must show only a "reasonable probability"—by less than a more likely than not standard— that, but for counsel's unprofessional errors, the result of the proceedings would have been different."); *see also In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012) ("We hold that if a personal restraint petitioner makes a successful

---

substantially similar crime to plead guilty to a non-removable offense."). Here, Buckman does suggest that he "may" have sought an exceptional downward sentence had he been properly informed. Pet'r's Suppl. Br. (Buckman Br. Counsel) at 9. But a possibility is not a probability, and Buckman bears the burden to show that his stated alternative outcome is "more likely than not." *Hagler*, 97 Wn.2d at 826. He even fails to approach meeting that burden here. Thus, we need not decide whether the likelihood of a more favorable plea deal might constitute a different outcome at the guilty plea stage.

[9] After *Riley*, we briefly veered from this clear standard in *In re Personal Restraint of Isadore*, 151 Wn.2d 294, 296, 88 P.3d 390 (2004), and in *In re Personal Restraint of Bradley*, 165 Wn.2d 934, 205 P.3d 123 (2009), both of which failed to require the petitioner to show actual and substantial prejudice of any kind. We subsequently corrected this detour. We have explained that "*Isadore* did not require the petitioner to show actual and substantial prejudice because the unique circumstances of the case compelled the court to apply the direct appeal standard rather than the personal restraint petition standard." *Yates*, 180 Wn.2d at 40 (citing *Stockwell*, 179 Wn.2d 588). We further explained that *Bradley*, by citing *Isadore*, mistakenly applied that same direct appeal standard. *Id.*

[10] We also adopted the United States Supreme Court's use of the "reasonable probability" standard for collateral attacks based on a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). *See In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 487, 276 P.3d 286 (2012) (applying the "reasonable probability" standard to a collateral attack alleging a *Brady* violation).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice.").

Since *Riley*, our definition of "prejudice" at the guilty plea stage has remained stable. In *Stockwell*, we again required discrete prejudice on collateral review, even in the context of constitutional errors that might be presumed prejudicial on direct review. 179 Wn.2d at 600-01. In *In re Personal Restraint of Davis*, we stated, "To actually obtain relief on collateral review based on a constitutional error the petitioner must demonstrate by a preponderance of the evidence that the petitioner was actually and substantially prejudiced by the error." 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004); *see also Hagler*, 97 Wn.2d at 825-26 (stating that its holding that petitioners must show that more likely than not they were prejudiced by an error was not limited to the particular type of petition at issue). Similarly, we held in *In re Personal Restraint of Yates*, that error must be combined with some "practical effect" to constitute prejudice. 180 Wn.2d 33, 41, 321 P.3d 1195 (2014). And we again rejected the petitioner's bare allegation that, but for the claimed error, he would have refused to plead guilty. *Id.* (Because Yates did not address prejudice, the court dismissed his claim that he would not have pleaded guilty.).

The dissent disagrees with our reliance on a more probable than not standard of proof, apparently because the dissent believes that the reasonable probability standard applies to any collateral attack on a guilty plea. Dissent at 5-10. The dissent ignores, however, that the reasonable probability standard was adopted for claims of inadequate assistance of counsel and was borrowed from *Strickland*. *Hill*, 474 U.S. at

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

55. The dissent also ignores that we recently considered a collateral attack on a plea that was not based on inadequate assistance of counsel, holding that a petitioner must prove actual and substantial prejudice, without even mentioning the reasonable probability standard.[11] *Stockwell*, 179 Wn.2d 588.

And despite the dissent's argument, we are not required to follow federal case law in articulating a standard that petitioners must meet in order to prevail on collateral attacks. The "[p]ersonal restraint procedure has its origins in the State's habeas corpus remedy, guaranteed by article 4, section 4 of the state constitution." *Hagler*, 97 Wn.2d at 823. While we have often looked to federal habeas corpus case law for guidance, we have always independently established our own standard of review for personal restraint petitions. *Id.* at 824 ("The well known and basic reasons for limiting collateral attack alluded to [by the Supreme Court] are . . . relevant to our state personal restraint petition proceedings."). As a result, the federal reasonable

---

[11] The dissent correctly notes that petitioners alleging misinformation from a judge must meet a higher standard than petitioners alleging misinformation from defense counsel. Dissent at 8. However, this disparity is not a result of the adoption of a "heightened standard of proof," but rather the application of our existing case law. *Id.* The fact remains that outside the ineffective assistance of counsel or *Brady* contexts, petitioners alleging that their pleas were involuntary must meet a more likely than not standard to show actual and substantial prejudice. Buckman did not argue, let alone ask us to adopt, a new, lessened standard of proof for involuntary plea cases. And, we decline to do so. Buckman does not have an inherent right to collateral relief in a personal restraint petition. *Davis*, 152 Wn.2d at 670 ("[T]his court has 'limited the availability of collateral relief because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders.'" (quoting *St.* Pierre, 118 Wn.2d at 329)). Instead, if Buckman wishes to seek collateral relief under a lessened standard of proof, he may seek relief in a federal court with a habeas corpus petition. *See Lafler v. Cooper*, 566 U.S. 156, 172-74, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (reversing a state court conviction because the defendant met the reasonable probability standard applicable in federal court, although he did not meet the applicable standard for relief in state court).

*State v. Buckman (Brian Wallace)*
No. 93545-9

probability standard is not "constitutionally mandated," as the dissent claims. Dissent at 10. Rather, we are bound by our own case law regarding the "more likely than not" standard of review applicable to petitioners on collateral review. *See Hagler*, 97 Wn.2d at 826.

In sum, we have clearly and repeatedly established that the petitioner must show not only error, but also actual and substantial prejudice.[12] Prejudice at the guilty plea stage means that the defendant would more likely than not have refused to plead guilty and would have insisted on going to trial.

In evaluating claimed prejudice, we engage in an objective, rational person inquiry, rather than a subjective analysis. *Cf.* dissent at 10.[13] In *Stockwell*, we clearly applied an objective analysis, stating that "[c]onsiderations of actual and substantial prejudice do not require insight into the defendant's state of mind and motivations, but simply look at the practical effects that resulted from error." 179 Wn.2d at 602. We adhered to this objective standard in *Yates*, where we reaffirmed that "we do not attempt to look into the mind and motivations of the defendant when determining whether an error resulted in prejudice." 180 Wn.2d at 41.

---

[12] This distinction between constitutional error and prejudice is consistent with the United States Supreme Court's definition of "prejudice" at the guilty plea stage. *See, e.g., Lafler*, 566 U.S. at 163 (in order to show prejudice at the guilty plea stage, "a defendant must show the outcome of the plea process would have been different" but for the constitutional error).

[13] The dissent incorrectly asserts that *Riley* employed a subjective analysis to determine if the defendant suffered any prejudice. Dissent at 11. In *Riley*, we noted that the defendant failed to "allege any prejudice." 122 Wn.2d at 782. Thus, we had no occasion to decide whether the defendant made a prima facie case of actual prejudice, let alone establish a subjective test to be used in future cases. *Id.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The United States Supreme Court also employs an objective analysis in this context. For example, in *Lee v. United States*, the Supreme Court examined whether it was rational for a hypothetical individual in the defendant's position to reject a plea and insist on going to trial. ___U.S. ___, 137 S. Ct. 1958, 1968-69, 198 L. Ed. 2d 476 (2017). The Court examined whether "it would be irrational for *a defendant in Lee's position* to reject the plea offer in favor of trial." *Id.* at 1968 (emphasis added). It went on to analyze whether "an individual," not just Lee himself, "would make the choice to reject the plea." *Id.* at 1968-69. While it is true that the court performed a "'case-by-case examination' of the 'totality of the evidence,'" this did not transform the analysis into a subjective exercise. *Id.* at 1966 (quoting *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)); *cf.* dissent at 10. Instead, defendants must "'convince[] the court that a decision to reject the plea bargain would have been *rational* under the circumstances.'" Dissent at 12 (emphasis added) (internal quotation marks omitted) (quoting *State v. Sandoval*, 171 Wn.2d 163, 175, 249 P.3d 1015 (2011)). Rationality is an objective inquiry informed by the circumstances of the defendant. *Lee*, 137 S. Ct. at 1969 ("Not everyone in Lee's position would make the choice to reject the plea.").

Furthermore, the dissent's subjective test reduces the prejudice inquiry into a question of mere credibility. Dissent at 13. While the defendant's credibility is certainly material to the question of whether the defendant would have rejected a plea and insisted on going to trial, it is not sufficient by itself to answer whether the defendant suffered actual and substantial prejudice. This is why "[a] bare allegation that a

petitioner would not have pleaded guilty if he had known all the consequences of the plea is not sufficient to establish prejudice," regardless of whether that allegation is credible or not. *Riley*, 122 Wn.2d at 782. Consequently, we must apply an objective standard to determine whether Buckman suffered actual and substantial prejudice.

### B. *Buckman Conflates Prejudice with the Underlying Constitutional Error*

Buckman claims he was prejudiced by (1) the misinformation regarding his possible sentence causing him to involuntarily plead guilty and (2) the fact that he would not have pleaded guilty had he been properly informed. Neither contention satisfies Buckman's burden to show prejudice.

Buckman misunderstands the distinction between constitutional error and the possible prejudice arising from that error. He argues that prejudice is established "when a person makes a decision to plead guilty based on incorrect information about the controlling sentencing consequences that will be imposed." Pet'rs Suppl. Br. (Buckman Br. Counsel) at 8-9; *see also id.* at 7 ("Actual prejudice occurs when the error had practical effects, including undermining the procedure allowing a knowing, intelligent, and voluntary plea decision."). For this definition of "prejudice," Buckman relies on two cases: the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and a concurring opinion in *Stockwell*, 179 Wn.2d at 603-13 (Gordon McCloud, J.). Neither suffices.

First, *Boykin* is inapposite. While that case established the constitutional need for knowing and voluntary guilty pleas, it was decided on direct appeal; the defendant was not required to show prejudice. 395 U.S. at 242. Here, in contrast, Buckman

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

brings a collateral challenge, where prejudice is required. *Stockwell*, 179 Wn.2d at 602-03.

Second, Buckman's reliance on a concurring opinion in *Stockwell* is misplaced. As discussed *supra* section II.A, a majority of this court in *Stockwell* required a showing of actual and substantial prejudice in order to withdraw a guilty plea on collateral attack. *Id.* Like Buckman, Stockwell had been misinformed of his possible sentencing consequences. *Id.* at 598. And like Buckman, Stockwell argued that his plea was therefore involuntary. *Id.* at 594. This court denied relief for failure to show practical consequences flowing from the error. *Id.* at 603.

A concurring opinion disagreed with the majority's prejudice inquiry and would have held that the petitioner can "prove actual and substantial prejudice *to his right* to a knowing, intelligent, and voluntary plea-bargain process . . . ." *Id.* at 612 (Gordon McCloud, J., concurring) (emphasis added). Under the concurring opinion, prejudice would be inherent in the constitutional error of an involuntary plea. This approach conflates the prejudice inquiry with the assignment of error and was rejected by the majority. We continued to require both error and prejudicial effect in *Yates*. 180 Wn.2d at 41.

We now reaffirm that "actual and substantial prejudice," as the phrase implies, requires that there be a defect of *substance*, not simply of procedure.[14] Where

---

[14] The dissent argues that misinforming Buckman of his possible sentencing consequences was the error and that Buckman's involuntarily plea was the prejudicial effect. Dissent at 1, 14. This mistakes a legal conclusion for actual causation; the involuntary plea was the constitutional error. Our decisions emphasize that the consequences for the defendant must

*State v. Buckman (Brian Wallace)*
No. 93545-9

Buckman claims that his involuntary plea "undermin[ed] the *procedure* allowing a knowing, intelligent, and voluntary plea decision," his claim is inadequate. Buckman Br. Counsel at 7 (emphasis added). Since this court requires both error and prejudice, it would be circular to conclude that prejudice is the existence of error.

### C. Buckman Offers Only a Bare Assertion of Prejudice Resulting from the Error

Buckman also claims that he would not have pleaded guilty had he been properly informed. Buckman Br. Pro Se at 7-8. But we require something more than a "bare allegation that a petitioner would not have pleaded guilty" to establish prejudice. *Riley*, 122 Wn.2d at 782; *see also Yates*, 180 Wn.2d at 41 (concluding that the petitioner failed to make any showing of prejudice by claiming merely "that he would not have taken the plea deal" but for the constitutional error). Buckman is responsible for showing that were it not for the constitutional error, a rational person in his situation would more likely than not have rejected the plea and proceeded to trial. *Hagler*, 97 Wn.2d at 826; *Riley*, 122 Wn.2d at 780-81; *Stockwell*, 179 Wn.2d at 602.

Instead, Buckman asserts without explanation that had he "been correctly informed . . . he would never have pled guilty." Buckman Br. Pro Se at 7. At another point, Buckman says that he simply would not have waived his trial rights so "quickly." Buckman Br. Counsel at 9. In the alternative, he also offers that he "*may* have opted to challenge the prosecution's evidence at trial." *Id.* (emphasis added). Buckman

---

be practical, not procedural. There is no practical consequence if Buckman would have pleaded guilty anyway. It is his burden to show otherwise.

*State v. Buckman (Brian Wallace)*
No. 93545-9

does not discuss whether a rational person in his situation would have rejected the plea deal and have proceeded to trial. Nor does he suggest that such a course would have been reasonably probable, let alone more likely than not. With only the benefit of a bald assertion, unsupported by argument or evidence, we must conclude that Buckman fails to meet his burden to adequately show prejudice.[15]

Nor is there reason to think that a rational person in Buckman's situation would in fact have chosen to proceed to trial. There was overwhelming evidence of the petitioner's guilt: Buckman acknowledged "dating" and living with K.B.S., stated that he thought their relationship was lawful, and emphasized that her parents had consented on K.B.S.'s behalf. K.B.S. confirmed that the relationship was sexual and claimed that it was consensual. And Buckman never claimed that he was innocent of the crime charged; on the contrary, he comments merely that had the facts been *different*, he would not have been guilty. *Id.* ("He would not be guilty if the complainant told him she was 14 years old. . . . He would not be guilty if KBS was 14 and wrong about the charging date."). It is not clear how he could reasonably have hoped to

---

[15] Contrary to the dissent's assertions, we do not "act[] as a factfinder" by making a credibility determination about Buckman's claims that he would not have pleaded guilty. Dissent at 5, 13. We also do not "completely disregard [Buckman's] claim[s] that he . . . really believed and actually relied on the misadvice." Dissent at 13. Even assuming that the claims that Buckman would not have pleaded guilty are credible, his allegations are still insufficient to establish prejudice under a "reasonable probability" standard, let alone a "more likely than not" standard. *See Riley*, 122 Wn.2d at 782. It is well established that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for [the misinformation]." *Lee*, 137 S. Ct. at 1967. Instead, Buckman must show that he would not have pleaded guilty, and that a rational person in his situation more likely than not would have chosen to proceed to trial. We answer this question by looking at the contemporaneous evidence that the defendant presents to "substantiate [his] expressed preferences." *Id.*

*State v. Buckman (Brian Wallace)*
No. 93545-9

achieve a better outcome at trial.[16] Thus, it is not clear why a rational person in his situation would have insisted on such a course.

One might speculate that if Buckman had been properly informed of his possible sentence, he might have risked trial, hoping the jury would have nullified the applicable law by refusing to find him guilty despite the strength of the evidence. *See Lee*, 137 S. Ct. at 1963 (finding that it was not irrational for defendant facing possible deportation to proceed to trial in the face of overwhelming evidence of guilt, where defendant amply established—and the government did not dispute—that "'deportation was the determinative issue'" in defendant's decision-making). But Buckman never mentions this possibility, let alone argues that more likely than not he would have taken such a gamble.

In sum, Buckman's uncertain nod in the direction of prejudice is insufficient. He does not meet his burden to show that a rational person in his situation would more likely than not have insisted on proceeding to trial. Thus, we conclude that Buckman failed to show actual and substantial prejudice sufficient to warrant relief and therefore deny his motion to withdraw his guilty plea.

---

[16] While the fact that a defendant "has no realistic defense to a charge" is not a per se rule preventing a defendant from showing prejudice, a defendant facing such a situation "will *rarely be able to show prejudice* from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966 (emphasis added). In those circumstances, a defendant will be hard pressed to show that a rational person more likely than not would have rejected a plea and insisted on going to trial.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

Buckman's motion to withdraw his plea is a collateral attack on his judgment and sentence. As a result, he must show both error and prejudice. We agree that Buckman was misinformed of his possible sentencing consequences, rendering his plea involuntary. This is a constitutional error. However, Buckman fails to show prejudice flowing from this error: he fails to show that the error more likely than not resulted in a different outcome at the guilty plea stage. We thus affirm the Court of Appeals in part on the ground that Buckman fails to show that the constitutional error was prejudicial. We deny Buckman's motion to withdraw his plea as involuntary and remand for resentencing and for any further proceedings consistent with this opinion.

*State v. Buckman (Brian Wallace)*
No. 93545-9

Wiggins, J.

WE CONCUR.

Madsen, J.

Stephens, J.

González, J.

Owens, J.

Yu, J.

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

No. 93545-9

GORDON McCLOUD, J. (dissenting)—A criminal defendant must be correctly informed of the nature and consequences of a guilty plea. If the defendant does not receive such advice, then the plea does not constitute a knowing, intelligent, and voluntary waiver of the constitutional right to a jury trial. *E.g.*, *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The majority correctly "conclude[s] that Buckman's plea was involuntary because he was misinformed [by defense counsel, the prosecutor, and the judge] that he might be sentenced to life in prison" when he really faced a much lighter maximum sentence of 114 months in prison if he lost at trial. Majority at 1-2. This misadvice rendered Buckman's guilty plea constitutionally deficient.

The majority nevertheless denies Buckman relief because it concludes that he failed to prove enough prejudice. *Id.* at 2. The majority can reach this conclusion only by disbelieving Buckman's sworn statements. Those sworn statements say that Buckman pleaded guilty to avoid exposure to life imprisonment and that if he had

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

known that his maximum prison exposure was only 114 months, he would have gone to trial instead.

But our court is not in the business of making credibility decisions from a cold record. Instead, we are required to order a reference hearing where a trial court judge can evaluate the credibility of such sworn statements. RAP 16.11, 16.12. In fact, our decisions in *Riley*[1] and *Rice*[2] and the United States Supreme Court's decision in *Machibroda*[3] say we must order such a hearing where, as here, there is a credibility dispute on just such an issue when it is raised in just such a postconviction (personal restraint or 28 U.S.C. § 2255) context.

Instead of remanding for such a hearing, the majority adopts a new, heightened standard of proof that dismisses the defendant's subjective understanding at the time of the plea as irrelevant. According to the majority, only two things matter: (1) whether a fictitious "rational" person would have rejected a plea deal if he or she had been correctly advised and (2) whether the defendant can prove that fictitious scenario by a "more likely than not" standard. Majority at 19. The majority

---

[1] *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 781-82, 863 P.2d 554 (1993).

[2] *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885, 828 P.2d 1086 (1992).

[3] *Machibroda v. United States*, 368 U.S. 487, 494, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962).

2

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

acknowledges that its new rule conflicts with a significant number of United States Supreme Court cases, including *Lee*,[4] *Frye*,[5] and *Hill*.[6] *See id.* at 14 n.11 ("[I]f Buckman wishes to seek collateral relief under a lessened standard of proof, he may seek relief in a federal court with a habeas corpus petition."). The majority even acknowledges that its new rule conflicts with precedent from this court. *Riley*, 122 Wn.2d at 781-82; majority at 11 ("In *Riley* . . . [w]e adopted the federal standard that the alleged prejudice must be proved by a 'reasonable probability.' . . ."). These prior controlling precedents hold that a petitioner seeking to withdraw his or her guilty plea due to misadvice from counsel is entitled to relief upon proof of personal prejudice by a "reasonable probability"—not the majority's heightened and totally objective "more likely than not," rational person standard.

I therefore dissent. I would apply the long standing, constitutionally mandated holdings from this court and the United States Supreme Court mentioned above and discussed in depth below. Following these decisions, Buckman has supported his claim of actual prejudice due to misadvice with a sworn statement and sufficient

---

[4] *Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1964-65, 198 L. Ed. 2d 476 (2017).

[5] *Missouri v. Frye*, 566 U.S. 134, 148, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

[6] *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

3

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

particularized facts; he is therefore entitled to a reference hearing to evaluate whether his claim that the misadvice caused him to plead guilty is credible.

ANALYSIS

I.  Misadvice about the Consequences of a Guilty Plea Violates a Defendant's Constitutional Right to a Knowing, Intelligent, and Voluntary Plea

The decision to plead guilty waives a defendant's rights to a jury trial and to present a defense. That decision has such heavy personal consequences and is of such constitutional magnitude that the defendant must make it personally—it cannot be made by counsel. *Brookhart v. Janis*, 384 U.S. 1, 7-8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966). It must also be knowing, intelligent, and a "voluntary act." *Machibroda*, 368 U.S. at 493. Critically, for a guilty plea to be knowing, intelligent, and voluntary, the defendant must be informed of the nature and consequences of entering that plea. *Id.*; *Brady*, 397 U.S. at 748.

I agree with the majority that the misadvice Buckman received from defense counsel, the prosecutor, and the judge about his sentencing exposure deprived him of those rights and rendered his guilty plea involuntary. Majority at 7-8. I also agree with the majority that this constitutional error alone does not warrant the relief that Buckman seeks (that is, withdrawal of his guilty plea). Majority at 8. Buckman

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

must also prove prejudice. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 602-03, 316 P.3d 1007 (2014).[7]

I disagree, however, with the majority's prejudice analysis. It flouts established precedent from this court and the United States Supreme Court and denies defendants their constitutional rights in three critical ways. First, the majority adopts a new, heightened "more likely than not" standard that requires personal restraint petitioners to prove more than the constitutional "reasonable probability" standard requires. Second, the majority applies an objective analysis when the constitution requires a subjective analysis. U.S. CONST. amends. VI, XIV. And third, the majority acts as a fact-finder by rejecting Buckman's specific allegations of prejudice, even though our cases say he is entitled to a reference hearing to determine credibility.

---

[7] Contrary to the majority's suggestion, my concurrence in *Stockwell* is consistent with the majority rule in that case requiring personal restraint petitioners to prove actual prejudice. Majority at 18. According to the majority, I would have found "prejudice . . . inherent in the constitutional error of an involuntary plea." *Id.* This reading is patently incorrect. If that were the case, I would have dissented in *Stockwell* since error was conceded. Instead, I concurred with the majority's conclusion that Stockwell failed to meet his burden of proving prejudice. 179 Wn.2d at 612 (Gordon McCloud, J., concurring).

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

II.     The Majority Adopts a "More Likely Than Not," Enhanced Proof Standard; This Conflicts Directly with Controlling Precedent Adopting a "Reasonable Probability" Standard for Cases Like This

Under *Riley*, which until today had been firmly established precedent governing personal restraint petition cases like this one, "In satisfying the prejudice prong, a defendant challenging a guilty plea [based on misadvice of counsel regarding sentencing exposure] must show that there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[8] 122 Wn.2d at 780-81 (emphasis added) (citing *Hill*, 474 U.S. at 59).

We adopted this "reasonable probability" standard in that personal restraint petition case because it is consistent with United States Supreme Court precedent addressing a petitioner's burden of proof on similar collateral challenges. *E.g., Lee,*

---

[8] The majority ascribes to *Riley* a "likely" standard that is notably absent from that opinion. Majority at 19. The issue in *Riley* was whether Riley could withdraw his guilty plea to robbery based on misadvice from counsel that he had no choice other than to accept an amended plea offer that was less favorable to him than the plea originally offered. (The amended offer authorized the prosecutor to increase the previously agreed upon sentence due to a revised offender score calculation in exchange for the dismissal of other pending charges.) *Riley*, 122 Wn.2d at 777-78. We held that Riley needed to prove by a *reasonable probability* that he would not have pleaded guilty and would have insisted on going to trial but for the misadvice. *Id.* at 780-81. As the majority correctly observes, "'[r]easonable probability'" is not "'more likely than not.'" Majority at 20 n.15. Thus, I am unsure how the majority derives from *Riley*'s "reasonable probability" language a "more likely than not" standard.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

137 S. Ct. at 1965 (explaining, in a collateral challenge to a guilty plea, that "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a '*reasonable probability*' that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (emphasis added) (quoting *Hill*, 474 U.S. at 59); *Frye*, 566 U.S. at 148 (holding, on review of a defendant's postconviction motion in state court, that "in cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'" (emphasis added) (quoting *Hill*, 474 U.S. at 59)); *Hill*, 474 U.S. at 59 (confirming, on habeas corpus petition, that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (emphasis added)).

To be sure, *Riley* and these Supreme Court cases involved claims that the misadvice came from defense counsel, thus triggering an ineffective assistance of counsel claim. In contrast, Buckman claims that the misadvice he received came not just from defense counsel but also from the judge and prosecutor, thus triggering a

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

claim that his right to a knowing, intelligent, and voluntary plea was violated directly by the judge and State (rather than indirectly through ineffective assistance). But this distinction between direct and indirect misadvice cases does not offer a principled basis for changing a petitioner's burden of proof based on who provided the misinformation. The harm felt by the petitioner is the same regardless of who supplied the error. And from a constitutional standpoint, misadvice from the judge is more disturbing than misadvice from defense counsel. Yet, the majority adopts a rule that requires petitioners harmed by misadvice from the judge to meet more exacting proof standards than if the same misadvice came from defense counsel. This heightened standard of proof defies logic and violates due process protections. U.S. CONST. amend. XIV.

The majority acknowledges that its new rule is inconsistent with federal United States Supreme Court precedent interpreting federal constitutional protections. Majority at 14 n.11 ("[I]f Buckman wishes to seek collateral relief under a lessened standard of proof, he may seek relief in a federal court with a habeas petition."). The majority also acknowledges that under its new rule, "petitioners alleging misinformation from a judge must meet a higher standard than petitioners alleging misinformation from defense counsel." *Id.*

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The majority justifies its heightened standard by relying on the value of finality. *See* majority at 14-15. But the Supreme Court and this court have already rejected that as a basis for increasing the regular prejudice requirement in these cases. According to the United States Supreme Court, "a showing of 'prejudice' from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas . . . ." *Hill*, 474 U.S. at 58. We agreed. We held that "for a petitioner on collateral attack claiming ineffective assistance of counsel, no 'double prejudice' showing above and beyond the prejudice showing required under *Strickland*[9] should be imposed." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012).

Nor is the majority's heightened "more likely than not" standard required by *Hagler*—the decision on which the majority relies for its newfound standard. Majority at 14-15 (citing *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 826, 650 P.2d 1103 (1982)). The only fact that *Hagler* and this case have in common is that they both involve constitutional errors; the similarity ends there. 97 Wn.2d at 819. (*Hagler* involved an erroneous jury instruction; this case involves misadvice on a

---

[9] *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

9

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

plea.) This one similarity is not enough to extract from *Hagler* a general "more likely than not" standard for all collateral challenges because different standards of prejudice apply to different claims on collateral review.[10] Moreover, as discussed above, the United States Supreme Court has already decided that the proper standard for misadvice on a guilty plea is the "reasonable probability" standard. And we adopted that standard for collateral attacks in *Riley*. 122 Wn.2d at 780-81.

III. The Majority Adopts a Purely Objective Standard; This Conflicts Directly with Controlling Precedent Holding That Whether a Defendant Understands the Consequences of a Plea Depends on His or Her Own Comprehension, Not on What Well-Educated Members of the Legal Profession Would Understand

The constitutionally mandated "reasonable probability" standard is a subjective standard. It asks whether the incorrect advice coerced or induced the defendant's decision to give up the right to trial and relieve the State of its burden of proving guilt beyond a reasonable doubt. Because the decision to plead guilty is a personal one that the defendant alone must decide, *Brookhart*, 384 U.S. at 7-8, the critical question in evaluating whether a plea is constitutionally valid turns on the defendant's own subjective understanding: whether the defendant pleaded guilty

---

[10]*See Stockwell*, 179 Wn.2d at 607-08 (Gordon McCloud, J., concurring) (describing how the burden of proof for personal restraint petitioners depends on whether they allege constitutional errors of the trial type, nonconstitutional errors, errors where harm is inherent in proof of the error, or structural errors).

10

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

"freely," "with full knowledge of his legal and constitutional rights and of the consequences of his act." *Wood v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601 (1966).

Indeed, the United States Supreme Court recently confirmed that when evaluating whether misadvice caused prejudice, we must apply a subjective, "'case-by-case examination' of the 'totality of the evidence.'" *Lee*, 137 S. Ct. at 1966 (quoting *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "Rather than asking how a hypothetical trial would have played out absent the error," we must "consider[] whether there was an adequate showing that *the defendant*, properly advised, would have opted to go to trial." *Id.* at 1965 (emphasis added).

Rather than apply this well-established, subjectively focused analysis about "the defendant," the majority adopts a new, totally objective analysis about the hypothetical average defendant. Majority at 15. The majority implies that such an objective analysis is required by *Riley*. *Id.* at 16-17. But the majority misreads *Riley*. *Riley*'s actual language applies a subjective analysis.

*Riley* explains that the focus of the prejudice inquiry is evaluating whether the petitioner has proved "*actual* prejudice." 122 Wn.2d at 782 (citing *In re Pers. Restraint of Peters*, 50 Wn. App. 702, 708, 750 P.3d 643 (1988) (citing *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 91, 660 P.2d 263 (1983) (*Hews* I))). This requires

11

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

the petitioner to "show . . . there is a reasonable probability that, but for counsel's errors, *he* would not have pleaded guilty and would have insisted on going to trial." *Id.* at 780-81 (emphasis added) (quoting *Hill*, 474 U.S. at 59). We ultimately dismissed Riley's allegation that he would not have pleaded guilty (with correct advice) because he provided only a "bare allegation" without any supporting facts explaining why he placed particular emphasis on the particular misadvice he received in deciding to plead guilty. *Id.* at 781-82 (citing *Hill*, 474 U.S. at 60). We never said that the need for specific supporting facts transformed the subjective, "*actual* prejudice" inquiry into an objective one.

To be sure, the majority is correct that the fact-finder must consider objective facts in order to perform a comprehensive prejudice inquiry. "Courts should not upset a plea solely because of *post hoc* assertions form a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's express preferences." *Lee*, 137 S. Ct. at 1967.

As discussed *supra*, Part II, our case law requires that a defendant must prove he or she would not have pleaded guilty and would have gone to trial by a *reasonable probability*. *Riley*, 122 Wn.2d at 780-81. "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Rice*, 118 Wn.2d

12

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

at 887 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). But just because case law uses the word "reasonable" does not turn it into a question about what a hypothetical, average, reasonable person would have done with correct information. The focus remains on whether the defendant, himself or herself personally, would have decided to plead guilty if he or she had received correct advice. *Riley*, 122 Wn.2d at 783; *Hill*, 474 U.S. at 60. "A 'reasonable probability' exists if the defendant 'convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *State v. Sandoval*, 171 Wn.2d 163, 175, 249 P.3d 1015 (2011) (alteration in original) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). This helps the fact-finder decide whether the petitioner's claim that the misadvice actually prejudiced him or her is credible. But this does not mean, as the majority believes, that courts must completely disregard a petitioner's claim that he or she really believed and actually relied on the misadvice.

That's why we have fact-finders to decide whether the petitioner's allegations are credible. *Riley*, 122 Wn.2d at 781.

13

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

IV.    Applying These Rules, Buckman Is Entitled to a Reference Hearing
before a Finder of Fact

But this court is not the right place to make that credibility decision.  Once a

personal restraint petitioner shows that he or she received misinformation about the

consequences of a plea, alleges that that misadvice caused him or her actual

prejudice, and provides particularized facts to support that allegation, he or she is

entitled to a reference hearing.  *Id.* (quoting *Hill*, 474 U.S. at 60); *see Rice*, 118

Wn.2d at 885 ("'If a petitioner makes at least a prima facie showing of actual

prejudice, but the merits of the contentions cannot be determined solely on the

record, the court should remand the petition for a full hearing on the merits or for a

reference hearing pursuant to RAP 16.11(a) and RAP 16.12.'" (quoting *Hews* I, 99

Wn.2d at 88)); *Machibroda*, 368 U.S. at 494 (holding that it was error for the district

court to make factual findings on controverted facts without first conducting a

reference hearing).

Buckman has satisfied *Riley*'s and *Rice*'s prerequisites for obtaining a

reference hearing.  Contrary to the majority's assertion, Buckman has presented

more than a "'bare allegation'" of prejudice.  Majority at 19 (quoting *Riley*, 122

Wn.2d at 782).  Buckman swears under penalty of perjury that he would not have

pleaded guilty if he had been correctly advised that he faced a maximum prison term

14

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

of only 114 months, rather than life, if he was found guilty after trial. Clerk's Papers (CP) at 88; Mot. for Discr. Review, Statement of Pet. for Review (Statement) at 4. Specifically, Buckman swears that the possibility of spending the rest of his life in prison was the decisive factor that "forced" him to plead guilty. CP at 90; Statement at 5. Indeed, it was this misadvice about a possible life sentence that Buckman explains caused his own mother to counsel him "to plead guilty and get it over with so [he didn't] go [to] prison for the rest of [his] life." Mot. for Discr. Review, Affidavit (Affidavit) at 1-2. According to Buckman, "had [he] been correctly informed [he] would never had pled guilty." Suppl. Br. of Pet'r at 7.

The majority flatly rejects these specific and sworn statements because the majority deems them to be self-serving. Majority at 11-12. But as I understand it, "the old common-law rule that made parties incompetent to serve as witnesses in their own cases" "was discarded long ago." *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005). Instead of supporting outright dismissal, "a witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony, not to its admissibility." *Id.* Until today, contemporary decisions from this court have been consistent with that rule. According to those decisions, whether a petitioner's own assertion of prejudice is credible depends on the totality of the circumstances, including the timing of when

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the motion for withdrawal was made in relation to the discovery of the error. *See State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010); *State v. Robinson*, 172 Wn.2d 783, 792, 263 P.3d 1233 (2011).

The majority's concern that Buckman's allegation of prejudice may not be credible is precisely why a reference hearing is necessary: "[T]he purpose of a reference hearing is to resolve genuine factual disputes." *Rice*, 118 Wn.2d at 886. Some factors weigh against believing Buckman: for example, his motion to withdraw his guilty plea was filed only after he violated the terms of his reduced SSOSA (special sex offender sentencing alternative) sentence and after that reduced sentence was revoked. But other factors weigh in favor of believing him: Buckman's delay in withdrawing his guilty plea may be innocent since it was only upon the appointment of new counsel for the SSOSA revocation hearing that Buckman discovered he was misadvised. For this reason, following *Riley* and *Rice*, we must remand the case to the trial court for an evidentiary hearing. RAP 16.11, 16.12.

Even the State concedes that remand for an evidentiary hearing is a proper course in this case. Resp't's Suppl. Br. at 16.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The majority insists it can outright reject Buckman's specific allegations of prejudice without remanding for a reference hearing because of *Stockwell*, *Yates*,[11] and *Riley*. Majority at 19. But none of these cases support the majority's position. *Stockwell*'s and *Yates*'s claims of prejudice were dismissed because they were unreasonable, not because they were self-serving. And *Riley*'s claim was dismissed because it lacked an allegation of subjective prejudice and any supportive facts.

In *Stockwell*, we held that misadvice that the maximum sentence was *lower* than it really was (20 years rather than life) could not, logically, have coerced Stockwell's guilty plea—because the misadvice about a lower sentence than statutorily allowed could not have scared Stockwell into pleading guilty more than correct advice about a longer possible sentencing consequence would have. 179 Wn.2d at 603. Perhaps recognizing this, Stockwell did not even claim that the misinformation caused actual prejudice. *Id.* Thus, we rejected Stockwell's argument for a presumption of prejudice as unreasonable, not because it was supported by self-serving statements (actually, it was not) as the majority believes.

We dismissed Yates's claim of prejudice for similar reasons. In *Yates*, Yates pleaded guilty to 13 counts of murder and 1 count of attempted murder in exchange

---

[11] *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 40, 321 P.3d 1195 (2014).

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

for dismissal of a 14th murder charge and the prosecutor's decision to forgo the death penalty. 180 Wn.2d at 35. As part of this plea deal, Yates received a total sentence of over 408 years—several lifetimes in prison. *Id.* at 36. Years later, Yates challenged his plea on the ground that he was misinformed about his maximum sentencing exposure on 2 of those 13 convictions. *Id.* at 36-37. And he was: specifically, Yates was told that he would receive (and did receive) two determinate 20-year sentences for two of the murders when the correct statutory maximum was really two indeterminate life sentences with a minimum of 20 years for each. *Id.* We recognized that while Yates would have received a higher term of years under the correct indeterminate sentencing scheme, he might have actually served less time because of the more discretionary concurrent sentence and parole rules of indeterminate sentencing. *Id.* at 40 n.2, 46-47 (Gordon McCloud, J., concurring). But either way, Yates was going to be serving the rest of his life in prison on the 11 other murder convictions. It was therefore unreasonable for him to claim that the misinformation affected his decision to plead guilty when he knew he would be serving a life sentence regardless. And, in fact, he made no such assertion; he did not claim prejudice at all. *Id.* at 36-37, 40.

Buckman's case is materially different. Unlike Stockwell and Yates, Buckman received misadvice that tended to coerce a plea—because he was told that

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the prison exposure he would face if he lost after trial was so much higher than it really was. Stockwell and Yates did not receive similar misadvice that tended to discourage going to trial. Thus, neither *Stockwell* nor *Yates* authorizes the majority to dismiss Buckman's petition rather than remand for a reference hearing.[12]

Nor does *Riley*. To the contrary, *Riley* requires us to grant Buckman a reference hearing. Riley pleaded guilty to robbery with a deadly weapon under the mistaken belief that the standard range for that conviction was 81 to 94 months. Actually, it was 101 to 126 months due to Riley's high offender score. *Riley*, 122 Wn.2d at 774. The trial court originally imposed a sentence of 87 months, within the lower but incorrect sentence range. *Id.* at 776. When the State discovered that sentencing error, it sought to correct it. Riley claimed that his defense attorney, at

---

[12] Our decision in *In re Personal Restraint of Fawcett*, 147 Wn.2d 298, 53 P.3d 972 (2002), is also inapposite, which is probably why the majority does not mention it. In *Fawcett*, as in *Stockwell* and *Yates*, we held that Fawcett failed to prove prejudice based on the particular facts of that case. Fawcett was misinformed that he would receive a maximum one-year community custody term if he pleaded guilty, but he received a mandatory two-year term instead. *Id.* at 299. After Fawcett violated his community placement, he sought to withdraw his guilty plea due to the misadvice. *Id.* at 301-02. We held that Fawcett could not prove prejudice based on those facts because he would have been in the same situation regardless of whether he received the one-year community placement term as promised, since he violated the terms of his release within the first two months of release rather than after the first year. *Id.* at 302. In contrast, Buckman claims he would not have pleaded guilty and would have gone to trial. This means Buckman could have received zero prison time had the jury acquitted him versus the maximum 114 months he now faces under a corrected sentence.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that later date, incorrectly informed him that (1) he had no choice but to allow the State to correct the sentence and (2) he could not withdraw his guilty plea. *Id.* at 777-79. We acknowledged that Riley's claim of misadvice conflicted with the letter his attorney wrote to him; that letter advised Riley that he could object to the sentence correction but that it was advisable for him to consent because the State was offering to dismiss three pending charges in exchange. *Id.* at 776-77. But we did not dismiss Riley's claim based on that factual dispute, and we did not choose to believe one version of that factual dispute over the other. Instead, we explained that a reference hearing was not necessary because Riley failed to allege any prejudice resulting from his counsel's alleged misinformation. *Id.* at 781-82. All Riley claimed was that his lawyer misadvised him. *Id.* at 781. He did not claim that it affected his own decision to accept the revised plea deal: "[Riley did] not insist on going to trial on the many charges against him." *Id.* Nor did he "allege special circumstances that would support a conclusion that he placed any special emphasis on the standard range sentence as originally calculated by the prosecutor." *Id.* at 782.

Unlike Riley, Buckman specifically alleges that he (and his mother) placed special emphasis on the erroneous advice that he would face life in prison if he went to trial and lost. CP at 90; Affidavit at 1-2. He also specifically alleges that if he

20

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

"had been correctly informed [he] would never had pled guilty." Supp. Br. of Pet'r at 7. Under *Riley*, any debate regarding the credibility of Buckman's allegations must be addressed at a reference hearing. 122 Wn.2d at 782 ("In order for a petitioner in a personal restraint proceeding to be entitled to an evidentiary hearing . . . , the petitioner must present at least a prima facie case showing *actual* prejudice.").

The fact that Buckman did not have a perfect defense to raise at trial does not automatically make his sworn assertion that he would have gone to trial unreasonable. The United States Supreme Court's recent decision in *Lee* confirms this. Lee was an immigrant who claimed he received misadvice about the immigration consequences of pleading guilty. Specifically, he alleged that he was not told that a guilty plea would subject him to mandatory deportation despite having lived in this country for 35 years since childhood. According to Lee, his lawyer told him just the opposite: that he would not be deported. *Lee*, 137 S. Ct. at 1963. Lee, however, did not have a viable trial defense. *Id.* at 1965-66. Nevertheless, the United States Supreme Court held that where the decision to reject a plea offer and proceed to trial is based on the possibility of obtaining a better result—even the *most unlikeliest* of possibilities (e.g., jury nullification)—that decision could still be rational and credible. *Id.* at 1968-69. *Lee* is applicable here since the United States

21

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

Supreme Court did not limit its holding to misadvice about immigration consequences. Following *Lee*, the fact that Buckman's trial defense was not a slam dunk does not automatically defeat his claim that the misadvice coerced his plea.

The fact that Buckman received what seems like a good deal does not render his allegation of prejudice automatically unreasonable either. That's because when misadvice relates to something other than the defendant's prospects of success at trial—as was the case here—the defendant does not have to prove that he or she would have gotten an acquittal or lower sentence by going to trial. *Id.* at 1965. Whether a defendant received an objectively better deal by pleading guilty rather than going to trial is irrelevant. *Id.* What matters is whether the defendant actually would have rejected the plea if he or she had received correct advice about the consequences of taking a chance at trial. *Id.* at 1967.

V. Buckman, as a Personal Restraint Petitioner, Is Not Automatically Entitled to Relief

Even though we cannot automatically deny Buckman relief, he is not automatically entitled to relief either. Buckman argues that he is entitled to automatic relief under two separate lines of cases: the *Bradley*[13] and *Isadore*[14] line,

---

[13] *In re Pers. Restraint of Bradley*, 165 Wn.2d 934, 205 P.3d 123 (2009).

[14] *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004).

22

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

and the *Montoya*[15] and *Hews* II[16] line. I agree with the majority that neither line provides Buckman with automatic relief.

### A. Buckman Would Have Been Entitled to Relief Automatically If He Had Raised This Claim at Trial or on Direct Appeal

If Buckman had moved to withdraw his guilty plea in the trial court, he would have been automatically entitled to relief: a defendant seeking withdrawal of his or her guilty plea prior to sentencing "need not establish a causal link between the misinformation and his decision to plead guilty." *State v. Weyrich*, 163 Wn.2d 554, 557, 182 P.3d 965 (2008) (per curiam) (citing *State v. Mendoza*, 157 Wn.2d 582, 590, 141 P.3d 49 (2006)); *Isadore*, 151 Wn.2d at 302; *see also* CrR 4.2(f).

Buckman probably would have been entitled to automatic relief if he had sought to withdraw his guilty plea in a direct appeal because he claims he did not discover the error until after sentencing. *Mendoza*, 157 Wn.2d at 591-92 (holding that no prejudice finding is necessary if the claim is brought on direct appeal and the defendant did not learn of the error until after sentencing); *accord State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001); *State v. Ross*, 129 Wn.2d 279, 287-88, 916 P.2d

---

[15] *In re Pers. Restraint of Mendoza Montoya*, 109 Wn.2d 270, 744 P.2d 340 (1987).

[16] *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 741 P.2d 983 (1987) (*Hews* II).

23

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

405 (1996); *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427

(1971) (granting relief despite the absence of prejudice).

Buckman, however, did not move to withdraw his plea prior to sentencing and

did not challenge the validity of his plea on direct appeal. His claim reaches this

court in a postconviction challenge, which we treat as a personal restraint petition.[17]

### B. Personal Restraint Petitioners Like Buckman Generally Must Prove Prejudice

A personal restraint petitioner challenging the validity of his or her guilty plea

on grounds of misadvice must generally prove that the misadvice caused actual and

substantial prejudice, i.e., that it coerced or induced the plea. *Stockwell*, 179 Wn.2d

at 602-03.

Buckman relies on several past decisions from this court for a contrary rule

that he does not need to prove prejudice. But his reliance on those cases is

misplaced. In *Stockwell*, we recognized that our case law concerning a personal

---

[17] Although this case caption is entitled "State v. Buckman" rather than in relation to a personal restraint petition, the title results from the procedural posture of this case. Buckman filed the underlying motion with the trial court pursuant to CrR 4.2. But because he filed it after sentencing, the motion was actually governed by CrR 7.8. As the Court of Appeals correctly noted, CrR 7.8(c)(2) directs the trial court to treat motions such as this one as personal restraint petitions. *State v. Buckman*, 195 Wn. App. 224, 229 n.4, 381 P.3d 79 (2016), *review granted*, 187 Wn.2d 1008, 386 P.3d 1097 (2017). Because Buckman's request should have been classified as a personal restraint petition, we treat it as such. *Accord* majority at 4 n.1.

24

restraint petitioner's burden to prove prejudice has not always been clear. 179 Wn.2d at 602-03. This confusion, we explained, stemmed primarily from our decision in *Bradley*. *Id.* at 603. Although *Bradley* involved a personal restraint petition, we did not require Bradley to prove prejudice before allowing him to withdraw his guilty plea. 165 Wn.2d at 939. Instead, we ruled that "[t]his court does not require a defendant to show that the misinformation was material to the plea." *Id.* We cited *Isadore*, 151 Wn.2d at 302, for this rule. *Bradley*, 165 Wn.2d at 939.

*Isadore*, however, involved a unique situation. In *Isadore*, we explained that we were not requiring Isadore, a personal restraint petitioner, to prove prejudice because of the unique circumstances giving rise to his request to withdraw his guilty plea. 151 Wn.2d at 299-300. In pleading guilty, Isadore relied on the State's promise that he would not be subject to any term of community placement. *Id.* at 297. After more than a year had passed and after the deadline for filing direct appeals had expired, the Department of Corrections modified Isadore's sentence to include a term of community placement. *Id.* at 299-300. Obviously, that violated his plea agreement. But because Isadore never had an opportunity to correct the error on direct appeal (the sentence modification occurred well after that period), we treated his claim as if it were a direct appeal. *Id.* at 299. We applied direct appeal standards

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and held that Isadore did not have to prove prejudice. *Id.* We explained that "[w]here the petitioner has not had a prior opportunity for judicial review, we do not apply the heightened threshold requirements applicable to personal restraint petitions." *Id.*

Although *Bradley* relied on *Isadore*'s no-prejudice rule, the unique circumstances giving rise to that rule were not present in *Bradley*. In *Bradley*, the claimed error was a miscalculated offender score that could have been discovered and corrected on appeal. 165 Wn.2d at 938.

In any case, we have backed off from *Bradley*'s automatic prejudice rule. *Stockwell*, 179 Wn.2d at 600, 602-03. After *Stockwell*, a personal restraint petitioner seeking to withdraw a guilty plea must generally prove prejudice absent unique circumstances, such as those in *Isadore*, which are not present here. Buckman's reliance on the *Isadore* and *Bradley* line of cases to support his argument for automatic relief is therefore misplaced.

As mentioned above, Buckman also relies on the *Montoya* and *Hews* II line of cases. These cases are also limited to specific facts. In both *Montoya* and *Hews* II, we held that when the error relates to an essential element of the crime, "[a] constitutionally invalid guilty plea gives rise to actual prejudice," even in a personal

26

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

restraint petition.[18] *Montoya*, 109 Wn.2d at 277; *accord Hews* II, 108 Wn.2d at 581-82 ("[T]o show 'actual prejudice,'" Hews must show "he did not understand the requisite elements of the crime or that his conduct satisfied those elements." (quoting *Hews* I, 99 Wn.2d at 88)).

Buckman claims that he was misadvised of sentence consequences, not elements. Thus, *Montoya*'s and *Hews* II's automatic relief rule does not apply directly to Buckman's situation either.

Following our post-*Stockwell* precedent, then, Buckman must prove actual and substantial prejudice resulting from the misadvice. As discussed above, he has alleged sufficient particularized facts to support his allegation of prejudice to merit a reference hearing.

## CONCLUSION

This case involves a straightforward application of our holdings in *Riley* and *Rice*. Under *Riley*, a personal restraint petitioner seeking to withdraw his or her guilty plea based on misadvice must prove by a reasonable probability that he or she

---

[18] The majority flatly dismisses *Montoya* and *Hews* II as nonprecedential "dicta." Majority at 9-10. Whether the *Montoya* and *Hews* II's automatic relief exception for certain personal restraint petitioners should be given stare decisis protection is not an issue we need to address in this case. Buckman is not raising misadvice regarding an essential element of the crime. The majority's dismissal of *Montoya* and *Hews* II's automatic prejudice exception as nonprecedential "dicta" is therefore unnecessary and illadvised in a case where that exception is not in conflict and not being challenged.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

would not have pleaded guilty but for that misadvice. Buckman has presented sworn statements explaining how misadvice from his defense counsel, the judge, and the prosecutor coerced him into pleading guilty and how he would have proceeded to trial, instead, without that misadvice. If Buckman's statements are credible, then he has presented sufficient evidence to satisfy *Riley*. Under *Riley* and *Rice*, Buckman's specific and detailed factual allegations entitle him to a reference hearing. Therefore, this case should be remanded to the trial court for a reference hearing pursuant to RAP 16.11 and 16.12 to determine the credibility of Buckman's allegations of prejudice.

For the foregoing reasons, I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Buckman (Brian Wallace)*, No. 93545-9
(Gordon McCloud, J., dissenting)

Gord McCloud, J.

Fairhurst, CJ.